1   LAURENCE F. PULGRAM (CSB No. 115163)
    lpulgram@fenwick.com
2   KATHRYN J. FRITZ (CSB No. 148200)
    kfritz@fenwick.com
3   HENRY Z. CARBAJAL III (CSB No. 237951)
    hcarbajal@fenwick.com
4   LESLIE KRAMER (CSB No. 253313)
    lkramer@fenwick.com
5   FENWICK & WEST LLP
    555 California Street, 12th Floor
6   San Francisco, CA  94104
    Telephone:   (415) 875-2300
7   Facsimile:   (415) 281-1350

8   Attorneys for Defendant
    CORBIS CORPORATION

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                   WESTERN DIVISION

13

14  | ANNA MARIA ALBERGHETTI, | Case No.  09-CV-05735-SVW (CWx) |
    BONNIE POINTER, and JUDY
15  TENUTA, on Behalf of Themselves | **DEFENDANT CORBIS**
    and All Others Similarly Situated, | **CORPORATION'S**
16                                      | **MEMORANDUM OF POINTS**
                                        | **AND AUTHORITIES IN**
                     Plaintiffs,        | **SUPPORT OF ITS MOTION TO**
17                                      | **DISMISS PURSUANT TO FED. R.**
          v.                            | **CIV. P. 12(B)(6)**
18
    CORBIS CORPORATION,                 | Judge:    Hon. Stephen V. Wilson
19                                      | Date:     October 26, 2009
                     Defendant.         | Time:     1:30 p.m.
20                                      | Place:    Courtroom No. 6

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND....................................................................................2

      A.    CORBIS' COPYRIGHT LICENSING ACTIVITY ..................2

      B.    PLAINTIFFS' ALLEGATIONS OF WRONGFUL
           CONDUCT .......................................................................4

APPLICABLE LEGAL PRINCIPLES ....................................................................5

ARGUMENT ...........................................................................................................6

I.      FEDERAL PREEMPTION ..........................................................6

II.     PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED BY
        THE COPYRIGHT ACT ............................................................7

      A.    Equivalence of the Plaintiffs' Claims to Exclusive
           Copyrights......................................................................8

      B.    The Works at Issue Fall Within the Subject Matter of
           Copyright ......................................................................12

III.    PLAINTIFFS' CLAIMS ARE ALSO BARRED BY THE
        DOCTRINE OF CONFLICT PREEMPTION WITH THE
        COPYRIGHT ACT ...................................................................14

      A.    The Copyright Holders' Rights to License Copyrights are
           Axiomatic and Critical to the Copyright Scheme ...................15

      B.    Plaintiffs' State Law Theories Would Prevent the
           Exercise of Copyrights in Photographs of Individuals.............16

IV.    PLAINTIFFS' ALLEGATIONS OF NON-ACTIONABLE
        INCIDENTAL USES ALSO FAIL TO STATE A CLAIM .............19

V.     PLAINTIFFS' RESTITUTION/UNJUST ENRICHMENT
        ALLEGATIONS ALSO FAIL TO STATE A CLAIM UPON
        WHICH RELIEF MAY BE GRANTED .....................................21

CONCLUSION........................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## <u>CASES</u>

*Alfano v. NGHT, Inc.*,
   623 F. Supp. 2d 355 (E.D.N.Y. 2009) ................................................................. 21

*Allison v. Vintage Sports Plaques*,
   136 F.3d 1443 (11th Cir. 1998) ................................................................. 18, 21

*Ashcroft v. Iqbal*,
   ___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................... 5

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) ................................................................. 5

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
   805 F.2d 663 (7th Cir. 1986) ........................................................ 10, 11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..................... 5, 9

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ................................................................. 2

*Brown v. ACMI Pop Div.*,
   375 Ill. App. 3d 276, 873 N.E.2d 954 (2007) ..................................... 18

*Brown v. Ames*,
   201 F.3d 654 (5th Cir. 2001) ............................................................... 13

*Butler v. Target Corp.*,
   323 F. Supp. 2d 1052 (C.D. Cal. 2004) ............................................... 11

*Cher v. Forum Int'l, Ltd.*,
   692 F.2d 634 (9th Cir. 1982) ............................................................... 20

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
   25 Cal. 4th 387, 106 Cal. Rptr. 2d 126 (2001) ................................... 12

*Daboub v. Gibbons*,
   42 F.3d 285 (5th Cir. 1995) ...................................................... 6, 14, 15

*Del Madera Props. v. Rhodes & Gardner, Inc*,
   820 F.2d 973 (9th Cir. 1987) .......................................................... 7, 22

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) ........................................................ 12, 14

*Effects Assocs., Inc. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990) ............................................................... 15

*Entous v. Viacom Int'l, Inc.*,
   151 F. Supp. 2d 1150 (C.D. Cal. 2001) ............................................... 6

*Fleet v. CBS, Inc.*,
   50 Cal. App. 4th 1911, 58 Cal. Rptr. 2d 645 (2000) ..................... 8, 9, 10

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Servs., Inc.*,
   958 F.2d 896 (9th Cir. 1992) ............................................................... 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Galbraith v. County of Santa Clara,*
 307 F.3d 1119 (9th Cir. 2002) ...................................................................... 2

*Gionfriddo v. Major League Baseball,*
 94 Cal. App. 4th 400, 114 Cal. Rptr. 2d 307 (2001) ................................... 21

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,*
 896 F.2d 1542 (9th Cir. 1990) ...................................................................... 5

*Hines v. Davidowitz,*
 312 U.S. 52, 61 S. Ct. 399, 85 L. Ed. 581 (1941) ...................................... 15

*Hoffman v. Capital Cities/ABC, Inc.,*
 255 F.3d 1180 (9th Cir. 2001) .................................................................... 19

*Intri-Plex Techs., Inc. v. Crest Group, Inc.,*
 499 F.3d 1048 (9th Cir. 2007) ...................................................................... 6

*KNB Enters. v. Matthews,*
 78 Cal. App. 4th 362, 92 Cal. Rptr. 2d 713 (2000) .................................... 10

*Knievel v. ESPN,*
 393 F.3d 1068 (9th Cir. 2005) ...................................................................... 6

*Landham v. Lewis Galoob Toys, Inc.,*
 227 F.3d 619 (6th Cir. 2000) ...................................................................... 11

*Laws v. Sony Music Entmt., Inc.,*
 448 F.3d 1134 (9th Cir. 2006) ...............................................................*passim*

*McBride v. Boughton,*
 123 Cal. App. 4th 379, 20 Cal. Rptr. 3d 115 (2004) .................................. 22

*Melchior v. New Line Prods., Inc.,*
 106 Cal. App. 4th 779, 131 Cal. Rptr. 2d 347 (2003) ................................ 22

*Michaels v. Internet Entmt. Group, Inc.,*
 5 F. Supp. 2d 823 (C.D. Cal. 1998) ........................................................... 11

*Midler v. Ford Motor Co.,*
 849 F.2d 460 (9th Cir. 1988) ...................................................................... 12

*Montana v. San Jose Mercury News, Inc.,*
 34 Cal. App. 4th 790, 40 Cal. Rptr. 2d 639 (1995) .................................... 20

*New Kids on the Block v. News Am. Pub., Inc.,*
 971 F.2d 302 (9th Cir. 1992) ...................................................................... 21

*Orson, Inc. v. Miramax Film Corp.,*
 189 F.3d 377 (3d Cir. 1999) ....................................................................... 15

*Page v. Something Weird Video,*
 960 F. Supp. 1438 (C.D. Cal. 1996) ...................................................... 20, 21

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
 464 U.S. 417, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984) ............................ 16

*Toney v. L'Oreal U.S.A., Inc.,*
 406 F.3d 905 (7th Cir. 2005) ............................................................ 11, 12, 18

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Waits v. Frito-Lay, Inc.*,
  978 F.2d 1093 (9th Cir. 1992) ................................................................. 12

*Wendt v. Host Int'l, Inc.*,
  125 F.3d 806 (9th Cir. 1997) .................................................................. 11

*William O'Neil & Co. v. Validea.com, Inc.*,
  202 F. Supp. 2d 1113 (C.D. Cal. 2002) ................................................... 20

*Worth v. Universal Pictures, Inc.*,
  5 F. Supp. 2d 816 (C.D. Cal. 1997) .......................................................... 7

## STATUTES

17 U.S.C. § 101 ............................................................................................ 12

17 U.S.C. § 102 .............................................................................................. 8

17 U.S.C. § 106 ..................................................................................... *passim*

17 U.S.C. § 201 ............................................................................................ 15

17 U.S.C. § 301 ..................................................................................... *passim*

California Civil Code § 3344 ................................................... 4, 8, 14, 19

## RULES

Federal Rule of Civil Procedure 12(b)(6) ...................................... 1, 5, 20

Federal Rule of Evidence 201 ...................................................................... 6

Federal Rule of Civil Procedure 8 ............................................................... 5

## OTHER AUTHORITIES

1 NIMMER, NIMMER ON COPYRIGHT § 1.01 (2009) .................................. 6, 7, 15, 22

U.S. Const., Art. I, § 8 ............................................................................... 16

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CORBIS CORPORATION'S MOTION TO DISMISS

Defendant Corbis Corporation ("Corbis") respectfully submits the following Memorandum of Points and Authorities in support of its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

The federal copyright law grants copyright owners specific exclusive rights: the right to reproduce, display, distribute, and transfer their copyrighted works. 17 U.S.C. § 106. Corbis is the licensor of millions of copyrighted photographic images and is engaged in the business of distributing them. It exercises its rights to license those copyrighted works through its website and displays those works in an online digital catalog to its prospective licensees. Corbis thus does what photographers have done since the invention of photography – show prospective licensees its photographic images and distribute copies to them pursuant to license – all in the direct exercise and exploitation of the rights granted to it under the Copyright Act.

Plaintiffs, whose images appear in some of these photographs, contend in this suit that their rights of publicity under California common law and statute trump Corbis' federal copyrights, vesting Plaintiffs (and any other human depicted in a photograph) with the power to stop Corbis from exercising its copyrights without their permission. Plaintiffs advance an unprecedented theory: that Corbis' mere offering or sale of licenses constitutes a *per se* violation of Plaintiffs' rights of publicity. As more fully set out below, however, federal law precludes Plaintiffs' attempts to usurp the copyright holder's rights in its copyrighted works. Plaintiffs' theory is barred by the Copyright Act and the principles of the Supremacy Clause to the U.S. Constitution. Specifically, the Plaintiffs' claims are both expressly preempted pursuant to Section 301 of the Copyright Act, and preempted by principles of conflict preemption due to their interference with accomplishment of

1  Congress' copyright regime.

2  **FACTUAL BACKGROUND**

3  **A.   CORBIS' COPYRIGHT LICENSING ACTIVITY**

4  Corbis Corporation is a leading visual media provider, offering a

5  comprehensive selection of photography, illustration, footage, typefaces and rights

6  clearance services to creative, media and marketing professionals through offices

7  worldwide. *See* Complaint ¶¶ 8, 15 & 16; Corbis' Request for Judicial Notice

8  (RFJN), Ex. 3 (Overview), at 14 (filed simultaneously herewith). Corbis owns and

9  licenses copyrights to various visual works to a wide variety of end users, including

10  periodicals for editorial uses, book publishers, and other news media outlets

11  including television or other video outlets. Complaint ¶ 20. In connection with its

12  licensing activity, Corbis displays its copyrighted photographs on its website in the

13  form of an online digital catalog, which permits potential licensees to search the

14  millions of available images using search terms. *Id.* ¶¶ 17 & 19. A user of the

15  website can view the catalog, select the copyrighted pictures or other works they

16  would like to license and, after registering on the Corbis website, acquire a license

17  to use the copyrights. *Id.*

18  Corbis grants licensees a limited license to use the copyrights in its works. It

19  makes clear on its website catalog and in its end-user license agreement that Corbis

20  grants no other rights, including trademark or publicity rights, that may be

21  implicated by the content of the photograph and the particular use contemplated by

22  the licensee. Corbis makes explicit that clearance of rights other than those rights

23  to the photographic image itself must be sought separately by the licensee. *See*

24  RFJN, Ex. 2 (Site Usage Agreement).[1] In pertinent part, the Site Usage Agreement

25  ───────────────

26  [1] As discussed in detail in Corbis' RFJN, the Court may take judicial notice of the content of Corbis' website, which is alleged in the Complaint, and attached in part as Exhibits to the Complaint. *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir.

27  1994), *overruled in part on other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (Court may take judicial notice of documents referred to in Complaint, the contents of which are readily ascertainable and not

28  disputed).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

states:

> **You are solely responsible for determining whether your use of any Content requires the consent of any third party or the license of any additional rights, and you should not rely solely on the information provided by Corbis.  If you are unsure whether additional third-party rights are needed for your use, you are responsible for consulting with competent rights management professionals or legal counsel.**

*Id.* at 8 (emphasis in original).

Corbis' online licensing terms and conditions for obtaining licenses to its copyrighted material similarly makes clear that the license granted is limited in scope and does not include rights of publicity:

> ***All Content may be subject to*** copyrights, trademarks, ***rights of publicity***, moral rights, property rights ***or other rights belonging to another party***. ***You are solely responsible for determining whether Your use of any Content requires the consent of any other party or the license of any additional rights***, and You should not rely solely on the information provided by Corbis. ***You are solely responsible for obtaining any and all releases and clearances as may be required***, including without limitation (a) rights from any representative guild, union, professional organization, or other authorized representative; and (b) if any music is included in the Content, master use, synchronization and performance licenses from the copyright proprietors of the applicable master recording(s) and composition(s) and such other persons, firms or associations, societies or corporations as may own or control the performing rights thereto.  ***If You are unsure whether additional rights are needed for Your use, You are responsible for consulting with competent legal counsel***.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

RFJN, Ex. 1 at 7 § 10 (Corbis Content License Agreement: Releases and Clearances) (emphasis added).  While browsing photographs, users can enlarge thumbnail versions of the photograph to display additional information about the particular photograph, including date (if available), description and rights restrictions.  For example, an enlarged picture notifies potential licensors whether certain releases have been obtained and whether additional clearances for use may be required.  *Id*., Exs. 4-6 (enlarged photographs from Complaint Exhibits A-C displaying possible needs of licensee to obtain additional rights).

### B.   PLAINTIFFS' ALLEGATIONS OF WRONGFUL CONDUCT

Plaintiffs contend that four alleged wrongful activities of Corbis give rise to three legal claims against Corbis.  ***First***, Plaintiffs allege that Corbis acquired photographs in which Plaintiffs appeared and placed the pictures on its website, for the purpose of selling licenses for use of the photographs.  Complaint ¶¶ 21, 37-38 & 44-45.  ***Second***, Plaintiffs allege that Corbis sold licenses of the pictures, without Plaintiffs' consent.  *Id*. ¶¶ 21-22, 38 & 45-46.  Plaintiffs assert that simply "***[b]y selling the said licenses***, Corbis has been using Plaintiffs' and the other Class members' names, images, and likenesses."  *Id*. ¶ 21 (emphasis added).  ***Third***, Plaintiffs contend that Corbis associated the names of the Plaintiffs with the pictures in which they appear on the website, which allowed their names to be used in the search function to locate the photographs.  *Id*. ¶¶ 22, 38 & 45.  ***Finally***, Plaintiffs allege that the pictures are used by Corbis to "promote sales" of the licenses to those photographs.  *Id*. ¶ 23.

These acts, the Plaintiffs claim, (1) violate their California common law rights of publicity, (2) violate California Civil Code Section 3344, and (3) constitute unjust enrichment for which they are entitled to restitution.  Complaint ¶¶ 36-42, 43-50 & 51-55.  Notably, Plaintiffs make no claim to ownership of the copyright in any of the photographs at issue, nor do they dispute Corbis' ownership rights.  Rather, they claim that their rights of publicity take primacy over any other

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

rights in these photographs, and prohibit Corbis from exercising any of its rights without Plaintiffs' consent.  Thus, the Complaint seeks in absolute terms an injunction "declaring and decreeing that defendant Corbis:  (1) has no right to use, exploit, publish, distribute, copy, advertise, license or transmit in any form Plaintiffs' . . . names, images and likenesses . . . ."  Complaint, Prayer for Relief, Section C.

## APPLICABLE LEGAL PRINCIPLES

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims asserted in the complaint.  Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 883 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929, 940 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949, 173 L. Ed. 2d at 883-84.  Unreasonable inferences or legal conclusions cast in the form of factual allegations need not be accepted as true.  *See Twombly*, 550 U.S. at 555-56, 127 S. Ct. at 1965, 167 L. Ed. 2d at 940.  Under the Supreme Court's decision in *Iqbal*, a complaint also cannot survive a motion to dismiss based on conclusory allegations of ultimate fact if it is does not make a factual allegation of actionable conduct on the part of a defendant.  *Iqbal*, 129 S. Ct. at 1957, 173 L. Ed. 2d at 887 ("respondent's complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind.  His pleadings thus do not meet the standard necessary to comply with Rule 8").

Although a court considers the face of the complaint and documents attached thereto to decide a motion to dismiss, *Hal Roach Studios, Inc. v. Richard Feiner &*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   *Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), it may also consider documents

2   not physically attached to the complaint where the complaint alleges the contents of

3   the documents and their authenticity is not questioned. *Branch*, 14 F.3d at 453-54.

4   A court may also consider any items that can be judicially noticed pursuant to

5   Federal Rule of Evidence 201. *See Intri-Plex Techs., Inc. v. Crest Group, Inc.*,

6   499 F.3d 1048, 1052 (9th Cir. 2007) (citation omitted). A party's website and the

7   contents thereof can properly be the subject of judicial notice. *See Knievel v.*

8   *ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (noting that "the rationale of the

9   'incorporation by reference' doctrine applies with equal force to internet pages as it

10  does to printed material"). *See generally* RFJN.

11  <u>**ARGUMENT**</u>

12          The heart of the instant matter is that the Plaintiffs have sued a copyright

13  holder for simply exercising its copyrights. Plaintiffs do this in the guise of

14  labeling Corbis' legitimate activities in connection with licensing its copyrighted

15  photographs as, instead, trafficking in Plaintiffs' "names, images or likenesses."

16  The attempt to blanket the legitimate exploitation of copyrighted works with the

17  cloak of commercial use of rights of publicity under state law is not permitted, and

18  is preempted by the federal law.

19  **I.    FEDERAL PREEMPTION**

20          The Copyright Act expressly preempts certain state laws that interfere with a

21  copyright owners' exploitation of its exclusive rights. 1 Nimmer, Nimmer on

22  Copyright § 1.01[B] (2009). In particular, it "expressly preempts 'all legal and

23  equitable rights that are equivalent to any of the exclusive rights within the general

24  scope of copyright as specified by [17 U.S.C. § 106].'" *Entous v. Viacom Int'l,*

25  *Inc.*, 151 F. Supp. 2d 1150, 1158 (C.D. Cal. 2001) (*quoting* 17 U.S.C. § 301(a)).

26  Title 17 U.S.C. § 301(a) "accomplishes the general federal policy of creating a

27  uniform method for protecting and enforcing certain rights in intellectual property"

28  by preempting other state law claims within its purview. *Daboub v. Gibbons*,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   42 F.3d 285, 288 (5th Cir. 1995).

2        The statute sets forth a two-part test for determining whether a state law

3   claim is expressly preempted by the Copyright Act.  First, a work "must come

4   within the 'subject matter of copyright.'"  *Del Madera Props. v. Rhodes &*

5   *Gardner, Inc,*, 820 F.2d 973, 976 (9th Cir. 1987); *see also* 17 U.S.C § 301(a).

6   Second, "the rights granted under state law must be 'equivalent to any of the

7   exclusive rights within the general scope of copyright as specified by Section 106

8   [of the Copyright Act].'"  *Del Madera Props*., 820 F.2d at 976; 17 U.S.C § 301(a).

9        Even if a state law claim can avoid express preemption, a claim will still be

10   preempted by the Copyright Act if the state law claim's operation conflicts with the

11   Act's conferral of exclusive rights on the copyright holder.  1 NIMMER ON

12   COPYRIGHT § 1.01[B][3][a].  As a leading treatise explains,

13        [E]ven apart from Section 301, the general proposition pertains in

14        copyright law, as elsewhere, that a state law is invalid that "stands as

15        an obstacle to the accomplishment of the full purposes and objectives

16        of Congress."  Such "conflict pre-emption" equally pertains when

17        compliance with both federal and state mandates is a physical

18        impossibility.

19   *Id*. (footnotes and citations omitted).  *See also Worth v. Universal Pictures, Inc.*,

20   5 F. Supp. 2d 816, 820 (C.D. Cal. 1997).

21        Here, Plaintiffs' right of publicity claims—which seek to do nothing short of

22   supplanting Corbis' copyrights with Plaintiffs' purported state law publicity

23   rights— can survive neither the test of express nor conflict preemption.

## II.   PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED BY THE COPYRIGHT ACT.

26        Plaintiffs assert that Corbis' license of copyrighted photographs violates their

27   rights of publicity under California common law and statute.  A claim for a

28   common law violation of rights of publicity requires proof of:

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  (1) the defendant's use of the plaintiff's identity; (2) the appropriation of

2  plaintiff's name or likeness to defendant's advantage, commercially or

3  otherwise; (3) lack of consent; and (4) resulting injury.

4  *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1918, 58 Cal. Rptr. 2d 645, 649 (2000).

5  A statutory right of publicity claim adds further requirements of knowing use and a

6  direct connection between the use and allegedly commercial purpose, and also adds

7  additional remedies in such events. *Id.*; *see also* Cal. Civ. Code § 3344.

8  **A.    Equivalence of the Plaintiffs' Claims to Exclusive Copyrights**

9  Plaintiffs' claims satisfy the first prong of the test of express preemption

10  because their asserted rights to block display, reproduction and distribution of

11  Corbis' photographs assert the equivalent of federal copyright interests.  Title 17

12  U.S.C. § 106, affords copyright holders, such as Corbis, certain exclusive rights in

13  their copyrighted works, including photographs such as those on Corbis' websites.

14  *See* 17 U.S.C. § 102(a) & (a)(1) (copyrightable works of authorship include

15  "pictorial [and] graphic . . . works").  These exclusive rights include the rights to

16  (1) display the work to the public;

17  (2) reproduce the work; and

18  (3) distribute copies of the work to the public by sale or other transfer.

19  17 U.S.C. § 106.  These are the very acts that Corbis undertakes in its license of its

20  copyrighted works that the Plaintiffs claim violate their rights of publicity.

21  Plaintiffs claim Corbis violated their common law and statutory rights by

22  (1) merely "obtaining" the photographs in which they appear (Complaint ¶¶ 21, 37

23  & 44); (2) displaying them in its online catalog, including to "promote" the

24  distribution of licenses to the works (*id. ¶¶* 21-23, 38 & 45); and (3) offering for

25  sale and selling licenses to the copyrighted pictures—that is distributing the

26  copyrighted works.  *Id*. ¶¶ 21-22, 38 & 45.  The alleged "commercial advantage"

27  Corbis receives is financial remuneration for the sale of licenses in the copyrighted

28  pictures.  *Id*. ¶¶ 24, 39, 46 & 52-53.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    In sum, Plaintiffs contend that, *merely because they appear in these*
2    *photographs*, Corbis' obtaining the copyrights in these works and then displaying,
3    reproducing and distributing the works, is *per se* a violation of Plaintiffs' rights of
4    publicity.  What is clear is that whatever rights the Complaint asserts, the very acts
5    of Corbis that Plaintiffs claim are wrongful are the same as—equivalent to—those
6    Corbis is exercising as a copyright holder.  *See Laws v. Sony Music Entmt., Inc.*,
7    448 F.3d 1134, 1144 (9th Cir. 2006) (vocalist's right of publicity claim based only
8    on sampling of copyrighted sound recording in another sound recording was
9    preempted; "[a]lthough the elements of [plaintiff's] state law claims may not be
10   identical to the elements in a copyright action, the underlying nature of [plaintiff's]
11   state law claims is part and parcel of a copyright claim.").

12   Plaintiffs attempt to get around this clear problem by employing the
13   linguistic trick of substituting the phrase "names, images, and likenesses" for
14   "copyrighted photographs" throughout the Complaint.  *See, e.g.,* Complaint ¶¶ 37-
15   40, 44-45 & 52-54.  But the use of code words such as "name" or "likeness" holds
16   no talismanic quality and cannot disguise the absence of any act by Corbis that is
17   not entirely subsumed by the rights expressly given to Corbis under the Copyright
18   Act.  *See Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, 167 L. Ed. 2d at 940 (mere
19   legal conclusions or recitation of elements of a claim, even if dressed up as factual
20   allegations, cannot state a claim).

21   *Fleet v. CBS, Inc*. is illustrative.  In *Fleet*, actors sought to interfere with the
22   distribution of a copyrighted motion picture in which they had appeared by filing
23   suit alleging a violation of their rights of publicity.  50 Cal. App. 4th at 1920,
24   58 Cal. Rptr. 2d at 651.  The court found the claims preempted, explaining:

25   Appellants may choose to call their claims misappropriation of right to
26   publicity, but if all they are seeking is to prevent a party from
27   exhibiting a copyrighted work they are making a claim "equivalent to
28   an exclusive right within the general scope of copyright."

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   *Id.* (citation omitted); *see also KNB Enters. v. Matthews,* 78 Cal. App. 4th 362, 372,

2   92 Cal. Rptr. 2d 713, 721 (2000) ("As between the exclusive copyright holder and

3   any actor, performer, model, or person who appears in the copyrighted work, the

4   latter may not preclude the former from exercising the rights afforded under the

5   exclusive copyright by claiming a violation of the right of publicity.").  The

6   Complaint's attack on the licensing of photographs only describes the exercise of

7   Corbis' copyrights with respect to photographs.  No "use" of the Plaintiffs' names,

8   images or likeness, apart from their mere appearance in the photographs, is alleged,

9   nor can it be.  This is all that Corbis does – display, reproduce, and distribute its

10  copyrighted works.

11      Ninth Circuit law likewise supports the proposition described in *Fleet*.  In

12  *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1141 (9th Cir. 2006), the

13  plaintiff objected to defendant's sampling and incorporation of portions of her hit

14  song into another artist's song and sued for violation of her right of publicity.  The

15  court found her right of publicity claims preempted, stating "it is clear that federal

16  copyright law preempts a claim alleging misappropriation of one's voice when the

17  entirety of the allegedly misappropriated vocal performance is contained within a

18  copyrighted medium."  *Id.*  Again, a bare allegation of a misappropriated name,

19  image or likeness was not enough to avoid preemption, where the alleged wrongful

20  conduct implicated *only* the exercise of exclusive copyrights.

21      Similarly, in *Baltimore Orioles, Inc. v. Major League Baseball Players*

22  *Association*, the Seventh Circuit held that baseball players' assertions of their rights

23  of publicity in the broadcast of their "performances" in baseball games was

24  preempted as a claim to control the copyrighted broadcast of baseball games.

25  *Baltimore Orioles,* 805 F.2d 663, 677 (7th Cir. 1986).  Moreover, the court

26  distinguished the players' inclusion in the mere "performance" of the game, which

27  was held preempted, from additional uses that would not be:

28      The Players' rights of publicity in their performances are preempted

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    only if they would be violated by the exercise of the Clubs' copyright

2    in the telecasts.  A player's right of publicity in his name or likeness

3    would not be preempted if a company, without the consent of the

4    player, used the player's name to advertise its product . . . placed the

5    player's photograph on a baseball trading card . . . or marketed a game

6    based upon the player's career statistics.

7    *Id*. at 676 n.24.

8         Indeed, analysis of the cases in which courts have declined to find

9    preemption bears out the distinction between mere inclusion in a copyrighted work,

10   and a further use in connection with a separate commercial product.  *See, e.g.*,

11   *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 809-810 (9th Cir. 1997) (animatronic

12   figures with actors' likenesses used to market airport bars); *Toney v. L'Oreal*

13   *U.S.A., Inc.*, 406 F.3d 905, 907, 910 (7th Cir. 2005) (use of plaintiff's likeness in

14   photograph depicted on hair-relaxer packaging not preempted due to commercial

15   purpose of the use); *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 621-24

16   (6th Cir. 2000) (duplication of actor's likeness in action figure based on character in

17   movie not preempted by Copyright Act; "[plaintiff] is not claiming the right of

18   publicity in order to gain rights in the telecast of his performance, or to contest

19   [defendant's] right to create derivative works from its copyrighted work in general.

20   Rather, he claims that the toy evokes his personal identity. . . ."); *Butler v. Target*

21   *Corp.*, 323 F. Supp. 2d 1052, 1056-57 (C.D. Cal. 2004) (claim based on use of

22   distorted title and lyrics from plaintiffs' song for advertising and signage in retail

23   store provided extra element to avoid preemption); *Michaels v. Internet Entmt.*

24   *Group, Inc.*, 5 F. Supp. 2d 823, 828, 836-37 (C.D. Cal. 1998) (using plaintiffs'

25   names and likenesses in radio, television and Internet advertising to promote

26   distribution of erotic videotape not preempted; noting "[defendant] correctly states

27   that the state law right to publicity action is preempted where the conduct alleged to

28   violate the right *consists only of copying the work in which the plaintiff claims a*

Fenwick & West LLP
Attorneys At Law
San Francisco

1   *copyright*") (emphasis added and citation omitted); *Comedy III Prods., Inc. v. Gary*

2   *Saderup, Inc.*, 25 Cal. 4th 387, 393, 106 Cal. Rptr. 2d 126, 131 (2001) (sale of t-

3   shirts containing life-like illustration of performers).

4        Something more than exploitation of the exclusive rights in a valid copyright

5   is needed for a purported publicity claim to avoid copyright preemption.  The

6   absence of this "something more" dooms Plaintiffs' claims.

7        **B.**    **The Works at Issue Fall Within the Subject Matter of Copyright.**

8        Plaintiffs' claims also satisfy the second prong for express copyright

9   preemption because it is without question that photographs fall within the subject

10  matter of copyright.  17 U.S.C. § 101 (providing that "pictorial, graphic, and

11  sculptural works include . . . photographs").  Again, the Plaintiffs try to skirt this

12  clear application of the preemption law by invoking the word "likeness," claiming

13  Corbis is licensing their "likenesses" rather than licensing photographs; again,

14  Plaintiffs' effort is fruitless.

15       Courts have held that uses of individuals' likenesses are outside the subject

16  matter of copyright and their use not preempted only when a use of something more

17  than the photograph is involved.  So, for example, in *Downing v. Abercrombie &*

18  *Fitch*, 265 F.3d 994 (9th Cir. 2001), a photographer sold an historical photo of

19  surfers in t-shirts to Abercrombie, who then published the photo in a catalog to

20  promote sale of a traditional surfer t-shirt line.  *Id.* at 999-1000.  The court found

21  that Abercrombie's use of the photograph containing plaintiff's image to sell its

22  clothing products was a use of a likeness outside the subject matter of copyright

23  embodied in the photograph.  *Id.* at 1004-1005.  *See also, e.g., Waits v. Frito-Lay,*

24  *Inc.*, 978 F.2d 1093, 1096 (9th Cir. 1992) (finding use of imitation of plaintiff's

25  voice to market tortilla chips not preempted, as voice attribute (as opposed to voice

26  recording) was outside of subject matter of copyright); *Midler v. Ford Motor Co.*,

27  849 F.2d 460, 463-64 (9th Cir. 1988) (similarly finding use of voice imitation of

28  plaintiff to promote automobiles not preempted); *Toney*, 406 F.3d at 910 (use of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   plaintiff's likeness in photograph placed on hair-relaxer package not preempted; use

2   of likeness to promote another product held outside subject matter of copyright).

3       Thus, exploitation of another's "persona," name, image or likeness in a

4   copyrighted work will avoid preemption only if it involves either a use *in addition*

5   to the exercise of copyrights, and/or unauthorized and illegitimate use of a work by

6   one *other than* the copyright holder.  *Brown v. Ames*, 201 F.3d 654, 656, 658-59

7   (5th Cir. 2001) is instructive in this regard.  There, the defendants were held liable

8   for both copyright infringement in plaintiffs' sound recordings and

9   misappropriation of plaintiffs' names, images and likenesses on product packaging

10  and catalogs.  *Id*.  The court in *Brown* stated that unauthorized use of one's persona

11  is not typically preempted.  *Brown*, 201 F.3d at 658.  In *Brown*, however, this result

12  pertained because defendants had placed the plaintiffs' names, images and

13  likenesses in its music catalogs and on CD and cassette packaging without

14  permission and did not possess a valid copyright license for the plaintiffs' sound

15  recordings.  *Id*. at 656-57.  The court found that plaintiffs' claim of

16  misappropriation in that case was not preempted, but specifically relied, for this

17  conclusion, on the principle that a claim would be preempted if brought against the

18  holder of the copyrights:

19          Only if states allowed similar claims against *authorized publishers* or

20          distributors of a work . . . would the purposes and objectives of the

21          Copyright Act be adversely affected.  Such suits would interfere to

22          some extent with the uniformity of the copyright system. . . .  Thus,

23          because the tort would currently not be sustainable against valid

24          copyright holders, allowing the claim in this context does not impede

25          the transfer of copyrights or the uniformity of the copyright system.

26  *Id*. at 660-61 (footnote and citation omitted) (emphasis added).  In the present case,

27  however, there is no allegation of such further promotional use of the copyrighted

28  work by Corbis to sell another product.  Nor is there any allegation of illicit use of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

the copyrighted work by anyone other than the copyright holder, Corbis. There are only the photographs that are displayed, offered for license, and licensed by the owner of the rights to do so.

Not surprisingly, no court has ever held that the mere appearance of a person in a copyrightable work jettisons the work beyond the scope of copyrightable subject matter. Indeed, such a rule would prohibit any photographer from *ever* displaying, reproducing or transferring (by sale and/or license) her photographs if they happened to include a human being. For example, under Plaintiffs' theory, it is not the retailer in *Downing* that would be precluded from using the surfers' photograph, it is the photographer who would be precluded from selling the photo to *anyone*—simply because it had a person's image in it. The ramification of Plaintiffs' claims is that *any* display and license of a photograph in which they – or any human being – appears violates the right of publicity.[2] This is not the law. If a mere license of a copyrighted work depicting an individual is being challenged, and "the language of the [Copyright] act could be so easily circumvented, the preemption provision would be useless, and the policies behind a uniform Copyright statute would be silenced." *Daboub*, 42 F.3d at 290; *see also id.* at 290, n.8. Here, only photographs, unquestionably the subject matter of copyright, are involved.

Plaintiffs' claims thus meet both prongs of Section 301's preemption test. Their publicity claims are therefore preempted by the Copyright Act, and should be dismissed for failure to state a claim.

## III.   PLAINTIFFS' CLAIMS ARE ALSO BARRED BY THE DOCTRINE OF CONFLICT PREEMPTION WITH THE COPYRIGHT ACT.

Even if the Plaintiffs' claims were not expressly preempted under

---

[2] While the named Plaintiffs are alleged to be "celebrities," it is important to remember that the right of publicity laws are not limited to celebrities and apply also to the non-famous when they are identifiable in a photograph used for commercial purposes. Cal. Civ. Code § 3344. Moreover, while not at issue here, Plaintiffs purport to assert right of publicity claims on behalf of a large class of individuals who appear in Corbis' photographs, regardless of celebrity status.

Section 301 of the Copyright Act, the claims are nevertheless preempted under the principles of conflict preemption. Conflict preemption arises, and a state law claim is invalid, if the claim "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Hines v. Davidowitz*, 312 U.S. 52, 67-68, 61 S. Ct. 399, 404, 85 L. Ed. 581, 587 (1941); *see generally* 1 NIMMER ON COPYRIGHT § 1.01[B][3][a] (discussing application of conflict preemption as reaching beyond Section 301(a) preemption in copyright). The objectives of Congress with respect to the Copyright Act "are to implement a nationally uniform system for the creation and protection of rights in a copyrighted work." *See Orson, Inc. v. Miramax Film Corp.*, 189 F.3d 377, 382 (3d Cir. 1999) (citation omitted). As this Circuit has recognized, copyright preemption is both explicit and broad. *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Servs., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992). A broad scheme of copyright preemption was adopted in part to "avoid the development of any vague borderline areas between State and Federal protection." *Daboub*, 42 F.3d at 290 n.8 (emphasis and citation omitted).

### A. The Copyright Holders' Rights to License Copyrights are Axiomatic and Critical to the Copyright Scheme.

The Copyright Act establishes the legitimacy of the business that Corbis is engaged in, guaranteeing the unfettered right to transfer copyright interests. *See* 17 U.S.C. § 201(d)(1) ("The ownership of a copyright may be transferred in whole or in part by any means of conveyance."); 17 U.S.C. § 201(d)(2) (any of the exclusive rights provided for in Section 106 of the Copyright Act may be transferred separately). This includes both exclusive and non-exclusive licenses for any and all copyrights. *See Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990). Further, as discussed above, Section 106 of the Copyright Act grants the copyright holder the exclusive right to distribute, reproduce, and display (among other rights) the copyrighted work. 17 U.S.C. § 106. Plaintiffs' demand that this

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Court assess damages for and enjoin all such displays, sales, and distribution of

2   those works places the right of publicity directly at odds with the rights accorded by

3   copyright.

4        Moreover, the fundamental purpose of the copyright clause of the U.S.

5   Constitution, as well as the copyright statute itself, is to encourage the broad

6   dissemination of copyrighted works.  *See* U.S. Const., art. I, § 8, cl. 8 (Congress is

7   empowered "[t]o promote the Progress of Sciences and useful Arts, by securing for

8   limited Times to Authors and Inventors the exclusive Right to their respective

9   Writings and Discoveries").  The remuneration of authors through copyright is but a

10  means to the ends of "giv[ing] the public appropriate access to their work product."

11  *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 429, 104 S. Ct.

12  774, 782, 78 L. Ed. 2d 574, 584 (1984).  As the Supreme Court has explained:

13       The sole interest of the United States and the primary object in

14       conferring the [copyright] monopoly lie in the general benefits derived

15       by the public from the labors of authors.'  It is said that reward to the

16       author or artist serves to induce release to the public of the products of

17       his creative genius.

18  *Sony Corp. of Am.*, 464 U.S. at 429, 104 S. Ct. at 782, 78 L. Ed. 2d at 584 (citation

19  omitted) (emphasis added).  Yet Plaintiffs' claims would deny the public such

20  access by prohibiting any such display or license of photographs of recognizable

21  individuals.

22      **B.**    **Plaintiffs' State Law Theories Would Prevent the Exercise of**
    **Copyrights in Photographs of Individuals.**

23

24       Independent of express preemption (which should apply here as discussed

25  above), permitting state common law or statutes to render tortious all copyright

26  licensing of photographs of individuals would substantially and adversely affect the

27  rights explicitly afforded by federal statute.  The Ninth Circuit highlighted this

28  potential difficulty in the *Laws* case:

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1       We sense that, left to creative legal arguments, the developing right of

2       publicity could easily supplant the copyright scheme.  This, Congress

3       has expressly precluded in § 301.  Were we to conclude that

4       [plaintiffs'] voice misappropriation claim was not preempted by the

5       Copyright Act, then virtually every use of a copyrighted sound

6       recording would infringe upon the original performer's right of

7       publicity.

8  *Laws*, 448 F.3d at 1145.

9       Affirmation of the Plaintiffs' theory would subject to liability not only the

10  use of photography in the sale or endorsement of products (which is not alleged

11  here), but any display and license of copyrighted photographs in which an

12  identifiable person appears.  *See* n.2, *supra*.  Under this regime, no photographer or

13  owner of a copyrighted photograph would be able to exploit their copyrights. [3]

14  Indeed, under Plaintiffs' theory, Corbis, or any other purveyor of copyrighted

15  photographs, would be exposed to damages—and subject to injunction—even if the

16  licensee had the absolute right to use the work as it did without recompense to

17  Plaintiffs.  The same would be true even if the end user had paid the Plaintiffs

18  whatever fee Plaintiffs demanded for the ultimate use made of their image.  Under

19  Plaintiffs' theory, it is the very display of the work and sale of the license—the core

20  rights provided by the Copyright Act—that constitute the wrongdoing.  Complaint

21  ¶ 21 and Prayer for Relief, Section C.  There are few more appropriate examples for

22  conflict preemption.  And it is thus not surprising that no Court has ever, in the

23

24  _____

[3]To be sure, there would be various defenses available based on the individual

25  circumstances of each photograph, including, among others, that the person was not identifiable; that the use fell within various exemptions under the statute; that the

26  subject had consented; or that California law did not apply.  In addition, there are issues around construction of the California statute and common law not addressed

27  by this motion, and which Corbis expressly reserves. Nonetheless, Plaintiffs' theory would establish as a baseline that licensing of any photograph of a recognizable

28  individual could constitute a tortious act in California notwithstanding federal copyright law.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    90-plus year history of the stock-photography industry, adopted such a theory.[4]

2    Even in less overtly conflicting scenarios the courts have recognized the

3    potential interference of rights of publicity with the ability to exploit rights

4    conferred by the Copyright Act.  In *Allison v. Vintage Sports Plaques*, 136 F.3d

5    1443 (11th Cir. 1998), the court considered application of the first sale doctrine to

6    the sale of trading cards incorporated into custom plaques and other displays.  *Id.*

7    at 1451.  There, plaintiffs alleged that the resale of trading cards bearing their

8    names and likenesses violated their state law publicity rights, notwithstanding the

9    grant of rights to defendant under the first sale doctrine in copyright law.  *Id.*

10   at 1444-45.  The court disagreed, holding that the first sale doctrine precluded the

11   right of publicity claim.  *Id.* at 1449.  It observed that "accepting [plaintiffs']

12   argument would have profoundly negative effects on numerous industries and

13   would grant a monopoly to celebrities over their identities that would upset the

14   delicate 'balance between the interests of the celebrity and those of the public.'"  *Id.*

15   at 1448-49 (citations omitted).

16   Similarly, in this case, construing Plaintiffs' rights of publicity to reach

17   Corbis' activities in licensing the copyrights in its photographs would cripple its

18   ability—indeed, the entire photography industry's ability— to license its

19   photographs.  While news agencies and other media would still be free to use

20

---

21   [4] The Illinois Court of Appeals that decided a prior case brought against Corbis did
     not address the conflict preemption issue.  *Brown v. ACMI Pop Div.*, 375 Ill. App.

22   3d 276, 287-88, 873 N.E.2d 954, 962-63 (2007).  Nor did it adopt the view that
     express preemption could not apply here—rather, it found a factual dispute in that

23   case over whether Corbis' activities constituted sale of "tangible goods" and
     therefore potentially was not within the "equivalence" prong required for express

24   preemption.  *Brown*, 375 Ill. App. 3d at 288, 873 N.E.2d at 963.  The Illinois state
     court chose not to apply the Ninth Circuit's decision in *Laws* in favor of its local

25   Seventh Circuit decision in *Toney*—a choice not presented to this Court.  *Brown*,
     375 Ill. App. 3d  at 287-88, 873 N.E.2d at 962-63.  Moreover, the Illinois state

26   court failed to appreciate the inapplicability of *Toney* here, where the claim alleged
     is not the taking of the plaintiff's persona for any promotional or other use

27   independent of licensure of the copyrighted work.  *See* Section II.B. *supra* at 12-14.
     In all events, however, even if the express preemption criteria were construed

28   narrowly and held not met here, that is exactly when the conflict preemption test
     must be applied and plainly does require preemption.

1  pictures of individuals in editorial works, given First Amendment protections[5] and a

2  specific exemption under California Civil Code Section 3344(d), it is not clear from

3  where they could obtain those photographs. Under the parameters of Plaintiffs'

4  claims, prospective licensees could not view potential photographs on a website or

5  a catalog. No repository could maintain such a display without exposure to liability

6  to all depicted. Indeed, the logical end of the Plaintiffs' claims would mean that no

7  copyright holder could display any work to inform others of its willingness to

8  license copyrights in the photographs of any individuals in California, as Plaintiffs

9  allege this is prohibited commercial use. Complaint ¶¶ 24 & 47.

10  Accordingly, even if not expressly preempted under 17 U.S.C. § 301, the

11  Plaintiffs' suit over Corbis' exercise of copyrights in photographs is preempted

12  under the doctrine of conflict preemption.

## IV. PLAINTIFFS' ALLEGATIONS OF NON-ACTIONABLE INCIDENTAL USES ALSO FAIL TO STATE A CLAIM.

15  To the extent that Plaintiffs assert that any ancillary activities of Corbis

16  beyond sale and distribution of licenses offends their rights of publicity, those

17  claims, too, are preempted. In addition to being preempted as part of the right of

18  publicity claims, these activities are themselves non-actionable as incidental to the

19  valid exercise of Corbis' copyrights.

20  While it is not clear whether Plaintiffs contend that any of these ancillary

21  activities can actually support a right of publicity claim independent of a sale of a

22  license,[6] the Complaint lists the following uses incidental to the licensing of

23  copyrights: (1) display of copyrighted photographs on Corbis' website (Complaint

24  [5] *See Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1183, 1189 (9th Cir.
25  2001) (reversing judgment against magazine for right of publicity violations;
magazine's publication of altered photograph of celebrity's character from a motion
26  picture was entitled to full First Amendment protection).
[6] From Plaintiffs' definition of the purported class they seek to represent, their
27  claims depend on injury "through Corbis' sale of purported licenses" in the images
at issue. Complaint ¶ 28. As so stated, no claim could rest on mere ancillary
28  display or linking of names to photos independent of the distribution of the photo
which is itself subject to preemption.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

¶¶ 21, 37-38 & 44-45), (2) display of the copyrighted photographs to promote the sale of licenses for the photographs (*id*. ¶ 23), and (3) alleged association of Plaintiffs' names to photographs to allow for name searches on the Corbis website. *Id*. ¶¶ 22 & 45.  None of these alleged uses is "actionable" for purposes of the right of publicity.

First, with respect to the "display" of the photographs on the website, this is simply an exercise of Corbis' display right as enumerated under Section 106, as stated above.  Moreover, even if the display right itself were ignored, and the posting on the website were framed as some form of promotion in furtherance of the sale of the copyrighted work, the display would still be a permitted "incidental" use.  Incidental use of a person's name, image or likeness is protected by the First Amendment to the U.S. Constitution.  This Circuit has held that First Amendment protection "extends to the truthful use of a public figure's name and likeness in advertising which is merely an adjunct of the protected publication and promotes only the protected publication."  *See Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982) (citation omitted).  Moreover, disposition of incidental uses is proper on a Rule 12(b)(6) motion to dismiss.  *See William O'Neil & Co. v. Validea.com, Inc.*, 202 F. Supp. 2d 1113, 1119 (C.D. Cal. 2002) (on a motion to dismiss, ruling that a book cover, flyleaf and other material advertising a book was adjunct to the protected publication of the book); *see also Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 797, 40 Cal. Rptr. 2d 639, 642-43 (1995) (use of photograph in advertisement for newspaper, and even in sale of posters for promotional purposes, not violation of right of publicity but incidental to legitimate news function of newspaper).

Thus, even if display of the pictures on Corbis' website were viewed as advertising or promotion of its efforts to license the pictures, it would be incidental to copyright licensing activity that is itself protected.  *See Page v. Something Weird Video,* 960 F. Supp. 1438, 1443-45 (C.D. Cal. 1996) (defendant was entitled to

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   include the plaintiff's image in a catalog for the purpose of enticing customers to

2   purchase the videos for which defendant owned a copyright); *Gionfriddo v. Major*

3   *League Baseball*, 94 Cal. App. 4th 400, 414, 114 Cal. Rptr. 2d 307, 317 (2001)

4   (noting advertisements for a baseball game that used names and depictions of

5   players would not be actionable; "[t]he owner of a product is entitled to show that

6   product to entice customers to buy it," without running afoul of publicity rights); *cf.*

7   *Alfano v. NGHT, Inc.,* 623 F. Supp. 2d 355, 361-62 (E.D.N.Y. 2009) (Corbis'

8   display on its website of photographs in which plaintiff appeared was necessary

9   incidental use in order to license photographs).

10          As to a search function that allows searches by Plaintiffs' names in

11   conjunction with the copyrighted pictures, this use is also incidental to Corbis'

12   licensing of copyrights.  "[I]t does not violate the right of publicity to use [a]

13   celebrity's name to identify the likeness if the *image* is lawfully used."  *Allison,*

14   136 F.3d at 1451 n.16 (emphasis in original); *see also Page*, 960 F. Supp. at 1444-

15   45 (use of plaintiff's name in advertisement for sale of defendant's copyrighted

16   videos was not actionable as an incidental use); *cf. New Kids on the Block v. News*

17   *Am. Pub., Inc.*, 971 F.2d 302, 308-310 (9th Cir. 1992) (use of musical group's name

18   in connection with telephone service was fair use, did not violate rights of publicity

19   and was not a trademark violation).  Thus, Plaintiffs' allegation that their names are

20   associated with pictures to allow for searching across the photographs and

21   identifying Plaintiffs is not actionable.

22   **V.     PLAINTIFFS' RESTITUTION/UNJUST ENRICHMENT**
        **ALLEGATIONS ALSO FAIL TO STATE A CLAIM UPON WHICH**
23       **RELIEF MAY BE GRANTED.**

24          The Plaintiffs' unjust enrichment claim is based on their allegations of

25   appropriation of their names, images and likenesses through Corbis' licensing of its

26   copyrights; in this regard, this claim mirrors the right of publicity claims.

27   Complaint ¶¶ 52-54.

28          As a threshold matter, "there is no cause of action in California for unjust

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   enrichment." *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 794, 131

2   Cal. Rptr. 2d 347, 357 (2003).  "Unjust enrichment," which is synonymous with

3   restitution, is not a theory of recovery, it is a general theory underlying remedies.

4   *Id.* (finding claim of unjust enrichment preempted by the Copyright Act).  Unjust

5   enrichment merely describes the basis for obtaining the equitable remedy of

6   restitution based on a defendant's unjust retention of a benefit.  *See McBride v.*

7   *Boughton*, 123 Cal. App. 4th 379, 387-88, 20 Cal. Rptr. 3d 115, 121 (2004) ("we

8   construe [plaintiff's] purported cause of action for unjust enrichment as an attempt

9   to plead a cause of action giving rise to a right to restitution").

10         In any event, as both Nimmer and the caselaw recognize, "a state law cause

11   of action for unjust enrichment . . . should be regarded as an 'equivalent right' and

12   hence, pre-empted insofar as it applies to copyright subject matter." 1 NIMMER ON

13   COPYRIGHT § 1.01[B][1][g]; *see also Del Madera Props*., 820 F.2d at 977 (unjust

14   enrichment claim based on conduct underlying preempted claim was likewise

15   preempted).  Thus, the Plaintiffs' restitution/unjust enrichment claim, mirroring

16   their flawed right of publicity claims, is also preempted and should be dismissed.

## CONCLUSION

18         For the foregoing reasons, Corbis respectfully requests that the Court grant

19   its Motion to Dismiss in its entirety, find that Plaintiffs' claims are preempted by

20   the Copyright Act and dismiss Plaintiffs' claims with prejudice.

21   Dated:  September 25, 2009              FENWICK & WEST LLP

23                                          By:_____

24                                              Laurence F. Pulgram

25                                          Attorneys for Defendant
                                            CORBIS CORPORATION

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO