1   ROBBINS UMEDA LLP
    BRIAN J. ROBBINS (190264)
2   brobbins@robbinsumeda.com
    KEVIN A. SEELY (199982)
3   kseely@robbinsumeda.com
    JAY N. RAZZOUK (258511)
4   jrazzouk@robbinsumeda.com
    600 B Street, Suite 1900
5   San Diego, CA 92101
    Telephone: (619) 525-3990
6   Facsimile:  (619) 525-3991

7   GOLD & COULSON
    A Partnership of Professional and
8   Limited Liability Corporations
    ARTHUR S. GOLD
9   asg@gcjustice.com
    11 S. LaSalle St., Suite 2402
10  Chicago, IL 60603
    Telephone: (312) 372-0777
11  Facsimile:  (312) 372-0778

12  Attorneys for Plaintiffs

13  [Additional Counsel on Signature Page]

14              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
15                    WESTERN DIVISION

16  ANNA MARIA ALBERGHETTI,        ) Case No. CV09-05735SVW(CWx)
    BONNIE POINTER, and JUDY       )
17  TENUTA, on Behalf of Themselves and ) CLASS ACTION
    All Others Similarly Situated,   )
18                                  ) CORRECTED PLAINTIFFS'
                        Plaintiffs, ) MEMORANDUM OF LAW IN
19                                  ) OPPOSITION TO DEFENDANT
          v.                        ) CORBIS CORPORATION'S
20                                  ) MOTION TO DISMISS
    CORBIS CORPORATION,            ) PURSUANT TO FED. R. CIV. P.
21                                  ) 12(b)(6)
                        Defendant.  )
22                                  ) Judge: Hon. Stephen V. Wilson
                                    ) Date: October 26, 2009
23                                  ) Time: 1:30 p.m.
                                    ) Place: Courtroom No. 6
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   BACKGROUND ON CORBIS' EXPLOITATION OF PLAINTIFF'S HARD-EARNED PUBLICITY INTERESTS ................................................ 1

II.   STATEMENT OF CASE ............................................................................ 2

III.   STANDARD ............................................................................................... 5

IV.   LEGAL ARGUMENT ............................................................................... 6

A.   Plaintiffs Have Adequately Stated Claims for Common Law and Statutory Right of Publicity Violations ........................................ 9

1.   Plaintiffs' Right of Publicity Claims are Not Expressly Preempted by the Copyright Act ............................................... 9

a.   Plaintiffs' Claims are Not "Within the Subject Matter of Copyright" ...................................................... 10

b.   Plaintiff's Claims are Not "Equivalent" to any Exclusive Rights of a Federal Copyright ...................... 13

2.   Plaintiffs' Claims are Not Impliedly Preempted by the Doctrine of Conflict Preemption ........................................... 18

B.   Corbis' Use of the Images is Commercial, Not Newsworthy, and thus is Not Subject to First Amendment Protections ................... 21

C.   Plaintiffs Have Adequately Stated a Claim for Restitution/Unjust Enrichment .......................................................... 24

V.   CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITES

**Page(s)**

## CASES

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001)......................................................23

*Ahn v. Midway Mfg. Co.*,
    965 F.Supp. 1134 (N.D. Ill. 1997)...............................................18

*Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*,
    No. 06-2949, 2007 WL 2406859 (7th Cir. Aug. 24, 2007) ..........6

*Alfano v. NGHT, Inc.*,
    623 F. Supp. 2d 355 (E.D.N.Y. 2009)...................................22, 23

*Allison v. Vintage Sports Plaques*,
    136 F.3d 1443 (11th Cir. 1998).....................................................19

*Ascon Props., Inc. v. Mobil Oil Co.*,
    866 F.2d 1149 (9th Cir. 1989).........................................................5

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
    805 F.2d 663 (7th Cir. 1986)....................................................11,12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................5

*Brown v. Ames*,
    201 F.3d 654, 658 (5th Cir. 2001) .................................................6

*Brown v. Corbis Corp.*,
    No. 02-L-005872 (Ill. Cir. Ct. July 23, 2004)...........................5, 6

*Comedy III Productions, Inc. v. Gary, Saderup Inc.*
    25 Cal. 4th 387 P.3d 797 (2001) ...................................................7

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.*,
    911 F.2d 242 (9th Cir. 1990).........................................................2

*Davidson & Associates v. Jung*,
    422 F.3d 630 (8th Cir. 2005)........................................................18

*Downing v. Abercrombie & Fitch,*
    265 F.3d 994 (9th Cir. 2001) .......................................................................11

*Facenda v. N.F.L. Films, Inc.,*
    542 F.3d 1007 (3d Cir. 2008) ......................................................................12

*Fleet v. CBS, Inc.,*
    50 Cal. App. 4th 1911 (2000) ...............................................................12, 17

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Servs., Inc.,*
    958 F.2d 896 (9th Cir. 1992) .......................................................................19

*Jones v. Rath Packing Co.,*
    430 U.S. 519 97 S.Ct. 1305 (1977)) ............................................................19

*KNB Enters. v. Matthews,*
    78 Cal. App. 4th 362 (2000) ..................................................6, 10, 11, 17

*Laws v. Sony Music Entmt., Inc.,*
    448 F.3d 1134 (9th Cir. 2006) ...............................................................2, 10

*McBride v. Boughton,*
    123 Cal. App. 4th 379 (2004) ......................................................................24

*Montana v. San Jose Mercury News, Inc.,*
    34 Cal. App. 4th 790 (1995) ........................................................................22

*Pacific Gas & Elec. Co. v. Energy Res. Conservation and Dev. Com'n,*
    461 U.S. 190 S.Ct. 1713 (1983) ..................................................................19

*Perfect 10, Inc. v. Google, Inc.,*
    No. CV 04-9484, 2008 WL 4217837 (C.D. Cal. Jul. 16, 2008) ..................25

*Philpott v. Sup. Ct.,*
    1 Cal.2d 512 (1934) .....................................................................................24

*Salestraq America, LLC v. Zyskowski,* ---F.Supp.2d----, 2009 WL
    1652146 (D. Nev. Jun. 10, 2009) ................................................................17

*St. John's United Church of Christ v. City of Chic.,*
    502 F.3d 616 (7th Cir. 2007) .........................................................................6

*Toney v. L'Oreal U.S.A., Inc.,*
    406 F.3d 305 (7th Cir. 2005) .......................................................................13

*Toney v. L'Oreal USA Inc.*,
   2002 WL 31455975 No. 02 C 3002 (N.D. Ill. Nov. 2, 2002)......................18

*Zacchini v. Scripps-Howard*,
   433 U.S. 562 (1977)...............................................................................10, 15

**STATUTES AND OTHER AUTHORITIES**

17 USC
   §101.......................................................................................................18
   §§102-103, 106.....................................................................................10

California Civil Procedure
   §3344..............................................................................................6, 16, 22

*California Expands the Statutory Right of Publicity for Deceased
   Celebrities While its Courts are Examining the First Amendment
   Limitations of that Statute*,
   10 DePaul-LCA J. Art & Ent. L. & Pol'y 259 (2000)................................... 5

## I.   BACKGROUND ON CORBIS' EXPLOITATION OF PLAINTIFF'S HARD-EARNED PUBLICITY INTERESTS

Plaintiff Anna Maria Alberghetti ("Alberghetti") is a world-renowned, award-winning actress and singer.  A former child prodigy, she began her singing career at the age of six, and performed at Carnegie Hall in New York at the age of thirteen.  By reason of Anna Maria Alberghetti's painstaking efforts over several decades to build public recognition of her voice, music, and acting abilities, Alberghetti developed a proprietary interest in her name, public personality, singing style, acting style, voice, and likeness.  ¶5[1]

An accomplished R&B and disco singer, Plaintiff Bonnie Pointer ("Pointer") is a former member of the world-famous singing group The Pointer Sisters.   By reason of Pointer's painstaking efforts to build public recognition of her voice and music, Pointer developed a proprietary interest in her name, public personality, singing style, voice, and likeness.  ¶6

Plaintiff Judy Tenuta ("Tenuta") (collectively with Alberghetti and Pointer referred to as ("Plaintiffs") is an actress, entertainer, author, writer, producer, and award-winning comedienne.  She has starred in her own HBO, Showtime, and Lifetime television specials, and twice been nominated for a Grammy Award.  By reason of her painstaking efforts to build public recognition of her unique

---

[1] All paragraph references ("¶__ or "¶¶__") are to the Class Action Complaint ("Company") filed August 5, 2009.

personality and public persona, Tenuta has developed a proprietary interest in her name, public personality, and likeness. ¶7

## II.    STATEMENT OF CASE

Defendant Corbis Corporation ("Corbis") unlawfully uses Plaintiffs' names, images, and likenesses on its websites to sell licenses to copyrighted photographs which contain images of Plaintiffs.  In its Motion to Dismiss, Defendant attempts to justify these unlawful uses by asserting that its purported copyright interest in certain photographs preempts Plaintiffs' right of publicity claims.  Regardless of whether or not Defendant actually does have a copyright interest in these photographs,[2] "the holder of a copyright does not have 'a license to trample on other people's rights.'"  *Laws v. Sony Music Entmt., Inc.*, 448 F.3d 1134, 1145 (9th Cir. 2006) (citation omitted).  Plaintiffs' rights of publicity are separate and distinct from the rights of the photographer, or the "author" of the copyright, as well as from the rights of the holder of the copyright.  Defendant's argument ignores this fact, wrongfully asserting that Plaintiffs' right of publicity claims are preempted by federal copyright law.  They are not.  Plaintiffs' claims are state law claims that do not come within the ambit of federal copyright law.  Defendant additionally contends that its use of these photographs is subject to the protections of the First

---

[2] Whether or not Defendant has a copyright interest in said photographs is a factual question that has not yet been determined and is inappropriate for resolution on a motion to dismiss.  *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).

Amendment.  However, Defendant's use of the photographs is purely commercial and thus not within the protections of the First Amendment.  Defendant's attempt to excuse its violations of California State law by introducing irrelevant federal laws and Constitutional protections should be rejected.    Plaintiffs' claims are adequately stated and are not subject to dismissal.

Defendant Corbis Corporation's Corrected Memorandum of Points and Authorities in Support of Its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(6) Corbis' 12(b)(6) ("Corbis Memo") dismissal memorandum in this Court ("Corbis Memo") rather grotesquely mischaracterizes Plaintiffs' position, and then proceeds to knock down the false strawmen its brief creates.  Corbis' memo, for example, misstates that Plaintiffs contend in this suit that their right of publicity under California common law and statute trump Corbis' copyright. [Corbis Memo at 4].  Remarkably, nowhere in Plaintiffs' complaint is this ever articulated as Plaintiffs' actual position.  Plaintiffs' claim in fact concerns Corbis' sale and its offering for sale of Plaintiffs' photographs.  These are undisputed acts expressly condemned under California common law and Cal. Civ. Code §3344, which states:

> "(a) Any person who knowingly uses another's name, voice, signature, *photograph*, or *likeness*, *in any manner*, on or in products, merchandise, or goods, or for purposes of *advertising or selling*, or *soliciting purchases of, products,* merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof." (emphasis added)

Second, somewhat inconsistently, Corbis' brief then contends that Plaintiffs' case is directed at Corbis' "licensing of its copyrights."  [Corbis Memo at 14-21] This case has nothing to do with "copyright licensing."  It is about Corbis' selling Plaintiffs' photographs – which are tangible merchandise or goods.  Most, if not all, right-of-publicity cases involve some tangible item – a photograph, a t-shirt, a lithograph – which can be copyrighted.  Corbis has conceded that Plaintiffs' right of publicity is a separate right.   Indeed, Corbis expressly tells its potential customers on its website that acquiring a copyright license in Plaintiffs' photographs does not give the licensee any right to violate Plaintiffs' right of publicity. [Corbis Memo p. 3] Corbis cannot ignore its own factual admissions. Again, Plaintiffs' claims concern Corbis' sale and Corbis' offering-for-sale of Plaintiffs' photographs – acts expressly condemned by California common and statutory law.

Thirdly, Corbis' memo briefly asserts that Plaintiffs' position represents First Amendment infringement and "upsets the delicate 'balance between the interests of the celebrity and those of the public.'"  [Corbis Memo at 18-19].  This is not, and never has been, Plaintiffs' position.   California law expressly exempts from coverage *use* of a person's identity for "…any news" or "public affairs."  Because this is an exemption from common law and the statute, it will be Corbis' burden at trial to demonstrate whether any of its sales of Plaintiffs' photos fall within this

exemption.  It is not disputed and should play no role in this Court's deciding

Corbis' 12(b)(6) motion to dismiss.  That will be a matter for discovery and proof.

Moreover, a nationally known entertainment law practioner once wrote:

> The commercial value of celebrity identity is a side effect of celebrity status, but that does not mean that a celebrity's good fortune must be shared freely with the public at large or relinquished to some opportunist with no connection to the celebrity.  Celebrities have invested years of time and effort to hone the skills that earned them their celebrity status.  In recognition of this fact,…state laws provide celebrities with the right to exclusively control and benefit from the use of their own images and identities."

*California Expands the Statutory Right of Publicity for Deceased Celebrities While its Courts are Examining the First Amendment Limitations of that Statute*, 10 DePaul-LCA J. Art & Ent. L. & Pol'y 259 (2000).  Who was the author of this insightful article?  Corbis' attorney, Bela G. Lugosi Jr.![3]

## III.   STANDARD

When reviewing a motion to dismiss, a court must accept as true all factual allegations contained in the complaint and construe them in the light most favorable to the plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1152 (9th Cir. 1989).

---

[3] Corbis' sales of pictures relative to non-exempt sales concerning rights of publicity have been judicially admitted by Bela Jr. in the case of *Brown v. Corbis Corp.,* No. 02-L-005872 (Ill. Cir. Ct. July 23, 2004).  Bela Jr., son of the famous Dracula Actor, attorney for Corbis, stated that Corbis tells the user if an image depicts a person, many states and countries have a right of publicity law that requires the user to obtain permission from the person depicted before they use the image in certain ways.

A complaint should be dismissed only if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  A district court should only dismiss a complaint if "'the factual detail … [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.'"  *St. John's United Church of Christ v. City of Chic.*, 502 F.3d 616, 625 (7th Cir. 2007), citing *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, No. 06-2949, 2007 WL 2406859, at *5 (7th Cir. Aug. 24, 2007).

## IV.   LEGAL ARGUMENT

It is well-settled that "a human likeness is not copyrightable, even if captured in a copyrighted photograph."  *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362, 365 (2000).  *See also Brown v. Ames*, 201 F.3d 654, 658 (5th Cir. 2001) ("names and likenesses do not become copyrightable simply because they are used to identify the source of a copyrighted work").  Defendant ignores the distinction between "names and likenesses" and copyrighted material, attempting to characterize this action as a suit against "a copyright holder for simply exercising its copyrights."  Mot. at 6.  It is not.  Plaintiffs are suing a purported copyright holder for violating their rights of publicity under California common law and Cal. Civ. Proc. §3344, and have adequately pled these state law claims which are not preempted by the federal law.

As we all know, Plaintiffs live in California which is the home of many celebrities and public figures.  We should therefore look to its Supreme Court for rights of publicity guidance.  In *Comedy III Productions, Inc. v. Gary*, *Saderup Inc.* 25 Cal. 4th 387, 21 P.3d 797 (2001), the defendant printed and sold original sketches of the Three Stooges on t-shirts and as lithographs, without the permission of their estates.  After discovery and a trial on stipulated facts, the Court ruled for the owner of the Stooges rights and condemned Defendant's conduct as a plain violation of the California right-of-publicity statute.  Said the California Supreme Court:

> "Saderup's lithographic prints of the Three Stooges are themselves tangible personal property, consisting of paper and ink, made as products to be sold and displayed on walls..."Saderup "...thus used the likeness of the Three Stooges on products, merchandise or goods: within the meaning of the statute." 21 P.3d at 802.  Saderup's business said the Court, "...was a commercial enterprise designed to generate profits solely from the use of the likeness of  the Three Stooges which is the right of publicity..."  *Id.* At 810.

Just as Saderup's lithographs (which were his original works which could be copyrighted by him) were deemed "paper and ink" products to be sold and displayed, so are Corbis' Plaintiffs' photographs "paper and ink" products to be sold and displayed.

While not necessary to this Court's determination of Corbis' motion to dismiss, the Opinion of Circuit Judge Goldberg in Illinois denying Corbis' Motion

to Dismiss on similar facts and law may be helpful.  Corbis' responsibility to police

its sales of photographs and images was addressed and wrote that Court:

> "...[T]his Court finds that Corbis would be in a more logical position to enforce their own customers' usage of the pictures.  Requiring [Plaintiffs] to police such sales would either force [Plaintiffs] to continually probe the market place for illegal use of [their] image, or would require that Corbis give [Plaintiffs] access to the names of their commercial customers so that [Plaintiffs] can police the customers [themselves].  If all commercial sales involve a right of publicity anyway, Corbis should be able to easily remedy the problem of illegal commercial use of [Plaintiffs'] pictures by requiring all commercial customers to obtain [Plaintiffs'] permission to use the pictures prior to purchasing the pictures from Corbis.  Corbis could also obtain [Plaintiffs'] permission itself in cases where its customers …[buy] the picture for personal use and Corbis becomes the commercial seller.  At this early stage in the litigation, these solutions are suggested merely for argumentative purposes against Corbis' public policy point of view." A copy of *Brown v. Corbis*, No. 02L005872, slip op. attached hereto as Exhibit B to the Gold Decl. A copy of *Brown v. ACMI Pop Div.*, 375 Ill. App. 3d. 276, 873, N.E. 2d 954 slip op. Attached hereto as Exhibit C to the Gold Decl.

Of course, an even easier solution presents itself: Corbis could just do the right

thing and agree to pay Plaintiffs royalties for the commercial sales of their image,

as Corbis does with other celebrities.

When a fan or collector buys a Plaintiff photo from Corbis, that sale

diminishes the market for Plaintiffs' own sales of their photos to fans and

collectors.  Nowhere in Defendant's Memo does it deal with this obvious [and

damning to Defendant] reality, whether or not Corbis attempts to shoehorn this

reality into its "express" or "conflict preemption."  Rather, Corbis' Memo in three

pages urges this Court to accept Corbis' website warning as a defense: "Horrors!

But we are not responsible!"  But to its customers who it knows intend to use Plaintiffs' photos commercially, Corbis says something quite different: "Just pay us more money!"[4]  Shame on Corbis.  [See Exhibit A attached at pp. 23-25.]  Nothing in California law insulates Corbis from liability for sales to fans, collectors, and known commercial users.   Nothing in Corbis' Memo even argues for such insulation.[5]  Instead, Corbis incorrectly asserts that plaintiffs' claims are preempted or precluded by federal law and constitutional protections.

### A.    Plaintiffs Have Adequately Stated Claims for Common Law and Statutory Right of Publicity Violations

Defendant does not assert that Plaintiffs have failed to plead any specific element of their common law or statutory right of publicity claims, but instead incorrectly asserts that these claims are preempted by federal law, either expressly by the Copyright Act or impliedly under the principles of conflict preemption. Def. Mot. at 6, 15.

### 1.    Plaintiffs' Right of Publicity Claims are Not Expressly Preempted by the Copyright Act

The Copyright Act's preemption (17 U.S.C. § 301) may operate to bar a Plaintiff's state claims (a) for which the Plaintiff can sue in copyright, or (b) for which the copyright act precludes any claims by a Plaintiff – such as a work's

---

[4] Corbis website as cited in complaint, p.5, lines 1-7.

[5] We do not agree that Corbis' sales to newspapers, etc. (if there are any) enjoy any immunity; but the Court need not reach the issue now.

being in the copyright public domain.  It is well-settled that right of publicity claims are generally not preempted by the Copyright Act.  *See Zacchini v. Scripps-Howard*, 433 U.S. 562, 573 (1977) ("Congress intended that the evolving common law rights of 'privacy,' 'publicity,' and trade secrets… would remain unaffected" so long as such claims remain different in kind from copyright infringement.); *KNB*, 78 Cal. App. 4th at 374.

The test for determining whether a state law claim is expressly preempted by the Copyright Act involves two prongs[6]: (1) whether the work at issue is within the subject matter of copyright as defined in §§102 and 103 of the Copyright Act; and (2) whether the state-law-created right is equivalent to any of the exclusive rights within the general scope of copyright as specified in §106.[7]  *See Laws v. Sony Music Entm't., Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2008).

> **a.    Plaintiffs' Claims are Not "Within the Subject Matter of Copyright"**

Under the first prong of the express preemption test, the court must determine if the subject matter of the state law claim—is "within the subject matter of copyright" as defined by the Copyright Act §§102 and 103.  *Id.*  It is well-settled that "'[a] person's name or likeness is not a work of authorship within the meaning of [] §102" and thus is "not within the subject matter of copyright."  *See id.* at 1141

---

[6] Defendant also applies this two-part test to determine express preemption.  Def. Mot. at 7.

[7] 17 U.S.C. §§102-103, 106.

(citing *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004 (9th Cir. 2001); *see also KNB*, 78 Cal. App. 4th at 371.

Moreover, a key element of the Copyright Act's definition of "fixed in a tangible form" is that the work must be "fixed in a tangible form *by or under the authority of the author*." *See* 17 U.S.C. §101; *see also Orioles*, 805 F.2d at 675. Here, Plaintiffs did not make or authorize the photos, and could not sue for any copyright violation. And Plaintiffs did not produce the photos for Corbis as "works-for-hire" or otherwise cause Corbis to acquire the photos (as in *Orioles*, discussed *supra*). They were not fixed in tangible form by the party suing. If a copyright or licensing lawsuit were brought by a photographer (who claimed a copyright) against Corbis; or by Corbis against one of its buyer "sub-licenses", then copyright questions might be at issue. Not here. Although a "photograph itself[] [is] a pictorial work of authorship," when "it is not the publication of the photograph itself, as a creative work of authorship," but rather the "persona" that is the basis for the Plaintiffs' claims, the photograph "is not a 'work of authorship' under the Act." *Downing*, 265 F.3d at 1003. Thus, because "[t]he 'subject matter' of a Right of Publicity claim is not a particular picture or photograph of plaintiff," as in copyright, but rather "'is the very identity or persona of the plaintiff as a human being,'" which is not protected by copyright law, it is not "within" its subject matter." *Id.* at 1004 (citing McCarthy's Treatise on Right of Publicity and Privacy).

Defendant concedes that "uses of individuals' likenesses are outside the subject matter of copyright," but asserts that "their use [is] not preempted only when a use of something more than the photograph is involved."  Mot. at 12.  However, Defendant points to no case law stating that "something more" than a photograph must be involved for preemption to occur.  Perhaps the "something more" Defendant refers to is what has been referred to by courts as an "expressive work" or "expressive use" of the plaintiff's identity.  *See, e.g., Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1029, 1029 n.15 (3d Cir. 2008).  In *Facenda*, the court noted that "when defendants' uses constitute 'expressive works,' right-of-publicity claims have been preempted."  *Id.* (citing 1 Nimmer on Copyright §1.01[B][3][b][iv][I], at 1-88.2(11)).  This category of "expressive uses" includes motion pictures in which a plaintiff acted, or songs sung by a plaintiff.  *See id.* (citing *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911 (2000) (distributing a movie in which the plaintiff acted an "expressive use" that preempted plaintiff's right of publicity claim) and *Laws*, 448 F.3d 1134 (licensing a portion of plaintiff's song for sample use in another artist's song an "expressive use" that preempted plaintiff's right of publicity claim); respectively).  These and other types of performances, such as those of a baseball player in a game, have been found to constitute "works of authorship."  *See, e.g., Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663 (7th Cir. 1986).  However, these types of performances are distinguishable from the case at hand, where all that is at issue is the presence

- 12 -

of the Plaintiffs' images, likenesses, and/or names in and attached to photographs. Defendant also asserts that Plaintiff has not alleged any "further promotional use of the copyrighted work by Corbis to sell another product." Mot. at 13. Even though Defendant has not provided any authority for why such allegation should be required to avoid express preemption, Plaintiff has in fact alleged that Corbis has used the copyrighted photographs at issue to sell a separate product, the licenses. ¶21.

### b. Plaintiff's Claims are Not "Equivalent" to any Exclusive Rights of a Federal Copyright

Assuming the subject matter of a plaintiff's state law claim is within the subject matter of copyright, a court then considers whether the rights granted under the state law are "equivalent" to any exclusive rights of a federal copyright. *Id.* at 1138. Here, the photographs at issue are not equivalent to any exclusive rights of a federal copyright, as "copyright laws do not reach identity claims." *Toney v. L'Oreal U.S.A., Inc.*, 406 F.3d 305, 910 (7th Cir. 2005). Defendant has acknowledged that publicity rights are distinct from copyright rights, noting that "Corbis grants licensees a limited license to use the copyrights in its works… [and] grants **no other rights, including trademark or publicity rights**, that may be implicated by the content of the photograph…" Mot. at 2. (Emphasis added).

Corbis' memo does not contest that Corbis warns its customer that its copyright license for an image does not include any rights of publicity. [Corbis

Memo at 2-4].  As Corbis tells its customers, and as it tells this Court, copyrights and Plaintiffs' publicity rights are *distinct.* [Corbis Memo pp. 2-4 and page 4 *supra*] Nothing in Corbis' Memo alters this reality; and there can be no copyright pre-emption of Plaintiffs' publicity claims against Corbis.  Corbis "warnings" to its commercial buyers to be aware of Plaintiffs' rights-of-publicity aggravates, rather than ameliorates, Corbis' liability.  Corbis advises its users "of the need to obtain permission from the owner of the right of publicity before putting the image to commercial use."  This fact, as noted, constitutes Corbis' concession that Plaintiffs' right of publicity claim is not pre-empted by copyright, but rather a separate still-existing right.  But including such a "disclaimer" is a hollow and cynical gesture. It's like Napster telling its internet "song-sharers" that they must of course agree not to share songs in any manner that violates the Copyright Act!  It's like a drug dealer telling his marijuana buyers that - they must of course agree to use the marijuana only for lawful medical purposes.  Wink ...wink!  The point is, the bona fides of such a practice, and the actual identity of buyers and their use of Plaintiffs' images must all be tested by discovery.  The law looks to conduct, more than self-serving words, in determining facts.

In light of Corbis' concession to its customers that Plaintiffs' right of publicity is a right separate from copyright, and that Corbis' mere sale of Plaintiffs' photographs does not extinguish Plaintiffs' right of publicity in these photographs, it is with considerable chutzpah that Corbis now argues total preemption ("express

or conflict") to this Court. If Plaintiffs' right of publicity claims are preempted, the logical inquiry becomes: where in Plaintiffs' complaint are there copyright claims against Corbis?  Alternatively, where in the Copyright Act are Plaintiffs' claims against Corbis negated?  The answers are: none and nowhere.

If the photographer sued Corbis for violating the photographer's right of publicity based on one of his photos, then that claim would be pre-empted, because the photographer had a copyright in the photograph.   Here Plaintiffs have copyrighted none of the offending photographs; nor could they.  As Corbis tells its customers, and as it tells this Court, copyrights and Plaintiffs' publicity rights are *distinct*.  Nothing in Corbis' Memo alters this reality; and there can be no copyright pre-emption of Plaintiffs' publicity claims against Corbis.

Indeed, Corbis concedes that state rights-of-publicity claims are not generally pre-empted by the Federal Copyright Act.  [Corbis Memo at 11].  To be sure, such a position would be untenable, especially in light of *Zacchini v. Scripps-Howard*,  433  U.S.  652  (1977),[8]  and  the  Seventh  Circuit's  strong  statement

---

[8] In *Zacchini*, the plaintiff performed a live human cannonball act.  *Id.*  A television station taped his act, and played it on the news.  *Id.* at 564.  Despite § 301, observed the Seventh Circuit, Zacchini could "sue successfully for violation of his right of publicity" *Orioles*,  805 F.2d at 675.  The television station's tape was not authorized by Zacchini.  433 U.S. at 564.  If Zacchini himself had recorded his act and copyrighted the recording,  and the television station then televised the tape without his authority, then Zacchini would prevail on a copyright claim, and any right-to-publicity claim only then would be pre-empted.  *Id.* at 573.  Notably, this *Zacchini* analysis also accorded *no* First Amendment immunity to the television station's use of the tape as news.  *Id.*

upholding the right-of-publicity against a pre-emption attack in *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905 (7th Cir. 2005). Corbis says that pre-emption in a given case depends on the specific facts. [Corbis Memo at 11]. Fair enough.

Corbis' Memo in a footnote asserts that "the Illinois state court failed to appreciate the inapplicability of *Toney* here, where the claim alleged is not the taking of the plaintiff's persona for any promotional or other use independent of licensure of the copyrighted work." [Corbis Memo at 18.] Corbis thinks that *Toney* differs from Plaintiffs' case because in *Toney* the copyrighted photograph was used "to endorse a product". Say what? This is pure sophistry. It's like arguing that because Willie Sutton was convicted of robbing a bank, it follows that robbing a liquor store must be okay. Here Plaintiffs' photographs are the product. And under California law, both "*advertising or selling, or soliciting purchases of products* are equally culpable violations. Cal. Civ. Code § 3344. *Toney* is dispositive. In fact, Plaintiffs' case is far stronger than *Toney's*, because Plaintiffs, unlike *Toney*, *never* consented to Corbis' sale and offering for sale of their identity and image, for any use.

Defendant also misconstrues Plaintiffs' argument as contending that "merely because they appear in the photographs" Corbis has *per se* violated Plaintiffs' rights of publicity by obtaining copyrights and displaying, reproducing and distributing these works. Mot. at 9. This construal of Plaintiffs' argument ignores a core fact alleged by Plaintiffs that is crucial to their claims—that Plaintiffs' names and/or

likenesses are being used by Defendant *for its commercial advantage*. This act is not, as Defendant contends, "equivalent to" those acts properly asserted by a copyright holder. *See, e.g., Salestraq America, LLC v. Zyskowski*, ---F.Supp.2d----, 2009 WL 1652146, *6 (D. Nev. Jun. 10, 2009) (allegations that defendants used [intellectual property] for their own commercial benefit in violation of state law changed the nature of its state claims so that they are qualitatively different from a copyright infringement claim and were not preempted).

Defendant's attempts to analogize this case to *Fleet* additionally fail to address that the court's discussion was limited to a "narrow issue": "whether an actor may bring an action for misappropriation of his or her name, image, likeness, or identity under section 3344 of the Civil Code when the only alleged exploitation occurred through the distribution of the actor's performance in a motion picture." *Fleet* at 1913, 1916.  Here, Plaintiffs are not all actors, nor even public figures, nor are the disputed copyrighted items "performances," in a motion picture or otherwise, as discussed *infra*.  Indeed, other courts have noted that Fleet's "broad language regarding preemption" is limited "to the unique facts of that case." *See KNB*, 78 Cal. App. 4th at 374.

Unlike the Plaintiffs in *Fleet* and *Laws*, here cases, Plaintiffs never consented to anyone's sales of the photographs, so they *never* had any control or copyright interest in the photographs to give up.  A key element of the Copyright Act's definition of "fixed in a tangible form" is that the work must be "fixed in a

tangible form" "*by or under the authority of the author*," see 17 USC §101, *Orioles*, 805 F.2d at 675.  *Toney* confirms this. *Toney v. L'Oreal USA Inc.*, 2002 WL 31455975 at \*2, No. 02 C 3002 (N.D. Ill. Nov. 2, 2002).  "A work is fixed if a plaintiff has consented to it."  *Toney* at \*2, citing *Ahn v. Midway Mfg. Co.,* 965 F.Supp. 1134, 1138 (N.D. Ill. 1997).  Here, Plaintiffs did not authorize the photos, and could not sue for any copyright violation.  They were not fixed in tangible form by the party suing (Plaintiffs).  Moreover, Plaintiffs' claims against Corbis are not "equivalent" to any copyright claim.  Indeed, Defendant Corbis has conceded that a publicity claim is "different and separate." [Corbis memo at 11].  Plaintiffs have no copyright claim against Corbis, or the photographers over the photos.  It is Corbis' unauthorized selling of their image that drives Plaintiffs' claim.

So neither prong of the pre-emption test is met here.  There is no Plaintiffs authorized work fixed in a tangible form at issue.  Plaintiffs' right of publicity is not equivalent to any relevant copyright – because they have no copyright at stake.

### 2. Plaintiffs' Claims are Not Impliedly Preempted by the Doctrine of Conflict Preemption

"Conflict preemption applies when there is no express preemption but (1) it is impossible to comply with both the state and federal law or when (2) the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Davidson & Associates v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) (citing *Pacific Gas & Elec. Co. v. Energy Res. Conservation and*

*Dev. Com'n*, 461 U.S. 190, 204, 103 S.Ct. 1713 (1983); *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305 (1977)).

In *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Servs., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992), the court explained: "Federal copyright law governs only copying…[;] 'if violation of the state right is predicated upon an act incorporating elements beyond mere reproduction or the like, there is no preemption.' Enforcement of Rasmussen's property right in his STC leaves Kalitta free to make as many copies of the certificate as it wishes… That Kalitta is prevented from then using these copies [for a purpose other than duplication] ***does not interfere in any way with the operation of the copyright laws***." (Emphasis added.)  Likewise, there is no "obstacle to the accomplishments and execution" of Congress's objectives by preventing a purported copyright holder such as defendant from using the copied photos for a commercial, for-profit purpose.

Defendant asserts that "in less overtly conflicting scenarios the courts have recognized the potential interference of rights of publicity with the ability to exploit rights conferred by the Copyright Act," citing *Allison v. Vintage Sports Plaques*, 136 F.3d 1443 (11th Cir. 1998) for support.  However, the court's observations in *Allison* were based on an entirely different set of facts and analysis of the "first-sale doctrine," which is not at issue here.

Despite Corbis' concession to its customers that Plaintiffs' right of publicity is a right separate from copyright, and that Corbis' mere sale of Plaintiffs'

- 19 -

photographs does not extinguish Plaintiffs' right of publicity in these photographs, it is with considerable chutzpah, therefore, that Corbis now argues total pre-emption to this Court. If Plaintiffs' right of publicity claims are preempted, the logical inquiry becomes: where in Plaintiffs' complaint is there copyright claims against Corbis?  Alternatively, where in the Copyright Act are Plaintiffs' claims against Corbis negated?  The answers are: none and nowhere.  Indeed, as discussed *infra*, the Copyright Act presumptively <u>does not</u> pre-empt a right of publicity claim.

No one has disputed (or can dispute) that Plaintiffs' photographs are products, merchandise or goods.  Indeed, Plaintiffs sell their own photographs. When a fan or collector buys a Plaintiff photo from Corbis, that sale diminishes the market for Plaintiffs' own sales of their photos to fans and collectors.  Nowhere in Defendant's Memo does it deal with this obvious [and damning to Defendant] reality, whether or not Corbis attempts to shoehorn this reality into its "express" or "conflict preemption."  Rather, Corbis' Memo in three pages urges this Court to focus solely to Corbis' website warning: "Horrors!  But we are not responsible!" But to its customers who it knows intend to use Plaintiffs' photos commercially, Corbis says something quite different: "Just pay us more money!"[9]  (Shame on Corbis.  See Exhibit A attached at pp. 23-24).

---

[9] Corbis website as cited in complaint, p.5, lines 1-7.

Nothing in California law insulates Corbis from liability for sales to fans, collectors, and known commercial users.  Nothing in Corbis' Memo even argues for such insulation.  This should be the end of the debate; Defendant's motion to dismiss should be denied; and we ought to proceed into discovery.

The paparazzi who took Plaintiffs photos at concerts and elsewhere, may well "copyright" their photos, and they may "license" the photos to Defendant Corbis for sale.  Corbis may in turn "license" the photo to its buyers.  The photographer would indeed be the copyright "author" of the works, which indeed is fixed in a tangible form.  We need express no opinion on the viability of these arrangements.  But these arrangements are flatly irrelevant to Plaintiffs' right of publicity.  And they are irrelevant to this lawsuit, which is between Plaintiffs and Defendant Corbis, not between Corbis and any photographer.

Under the conceded facts of Plaintiffs' complaint, there simply cannot be any copyright pre-emption of Plaintiffs' publicity claims.

**B.    Corbis' Use of the Images is Commercial, Not Newsworthy, and thus is Not Subject to First Amendment Protections**

Because Corbis' use of the photographs is not newsworthy, Defendant's argument that upholding Plaintiffs' rights of publicity would preclude its First Amendment protections is unavailing.  Mot. at 18-19.  Plaintiffs recognize that use of images for newsworthy stories or matters or public interest are protected under the First Amendment, and have specifically alleged that "Corbis' use of the images

is not connected with any news, public affairs, sports broadcast or account, or any political campaign." ¶24.

In *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790 (1995), the court held that a person's photograph originally published in one issue of a periodical ***as a newsworthy subject*** may be republished in another medium ***as an advertisement for the periodical itself*** without the person's written consent. Defendant's attempt to construe *Montana* in support of their "incidental use" of their purported copyright is distinguishable based on the facts that Corbis is neither a news periodical nor are the images being published as "newsworthy" subjects. Thus, the First Amendment protection for incidental uses does not apply. Defendant Corbis' display of copyrighted photographs on its websites to promote the sale of its licenses was addressed by the Eastern District of New York in *Alfano v. NGHT, Inc.*, 623 F. Supp. 2d 355 (E.D.N.Y. 2009). It should at the outset be noted that *Alfano* is not authoritative and the New York State right of publicity statute at issue varies considerably from Cal. Civ. Code §3344. *Id.* at 357. Further, the *Alfano* court was deciding a motion for summary judgment. *Id*.

Like Plaintiffs, the plaintiff in *Alfano* characterized Corbis' display of photographs on its website as "'advertising,' arguing that the Image as displayed on Corbis's website served as advertising for the licensing of the Image." 623 F. Supp. 2d at 361-62. Although the court framed the issue as a "question of *advertising* for sale of images for use in a lawful manner, which commonly will

involve some display or circulation of the images themselves," finding that Corbis' use of the images on the website was lawful under N.Y. Civ. Rights Law §51, the New York statute specifically states that "nothing contained in this article shall be so construed as to prevent any person, firm or corporation from selling or otherwise transferring any material containing such… picture... in whatever medium to any user of such … picture… or to any third party for sale or transfer directly or indirectly to such a user, for use in a manner lawful under this article …" *Id*. at 362.  Because the *Alfano* court's analysis was confined to the "use in a lawful manner" exception to N.Y. §51, it is inapplicable to §3344 which has no analogous exception.

The court also noted that the New York State statute's lawful use exception meant that Corbis could conduct its business without liability "so long as the ultimate use of their images is lawful." *Id*. at 361.  Because by its licensing terms and conditions, Corbis makes the licensee "solely responsible" for determining whether they are required to obtain any consent, release, clearance, or license of additional rights, it cannot ensure that "the ultimate use of their images is lawful," without which "they would be liable for the sale of the very images which media publications could then publish with impunity."  *See* Mot. at 3; *Alfano*, 623 F. Supp. 2d at 361; *see also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) ("turning a blind eye to detectible acts of infringement for the sake of profit gives rise to liability").

### C.    Plaintiffs Have Adequately Stated a Claim for Restitution/Unjust Enrichment

"There are several potential bases for a cause of action seeking restitution." McBride v. Boughton, 123 Cal. App. 4th 379, 388 (2004).  For example, restitution may be awarded when the defendant obtains a benefit from the plaintiff "which 'in equity and good conscience' it ought not" have, and the law will imply a contract in order to avoid unjust enrichment in such cases.  *See G.S. Rasmussen* at 907 (quoting *Philpott v. Sup. Ct.*, 1 Cal.2d 512, 522 (1934)); *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004).  Here, Plaintiff has properly alleged a claim for restitution under a theory of unjust enrichment[10] by alleging that Defendant has obtained a benefit from the use of Plaintiffs' names, images, and likenesses; namely, the profits generated from the sale of licenses to photographs displayed on its websites, including those depicting Plaintiffs.  ¶23.

Defendant asserts that Plaintiffs' restitution/unjust enrichment claim "mirror[s]" their right of publicity claims, and is thus preempted.  Mot. at 22. However, as discussed *infra* at Section ___, Plaintiffs' right of publicity claims are

---

[10] Defendant asserts that because "[u]njust enrichment merely describes the basis for obtaining the equitable remedy of restitution base on a defendant's unjust retention of a benefit," "'there is no cause of action in California for unjust enrichment.'"  Mot. at 21-22.  While technically, the fact that there is no cause of action for unjust enrichment may be true, there is a cause of action for restitution (*see McBride*, 123 Cal. App. 4th at 388).  Plaintiff's Complaint adequately alleges the cause of action for restitution under the heading "COUNT III: Restitution/Unjust Enrichment" in an effort to clearly convey the theory under which the restitution cause of action is advanced.

- 24 -

not preempted.  Further support for this proposition can be found in *Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484, 2008 WL 4217837, *9 (C.D. Cal. Jul. 16, 2008), where the court stated: "To the extent [an] unjust enrichment theory of relief is based on non-preempted claims—*i.e.*, **right of publicity**, trademark—the unjust enrichment claim is not preempted by the Copyright Act."  (Emphasis added). Because Plaintiffs' unjust enrichment theory of relief is based on their non-preempted claims for right of publicity, they have adequately stated a claim for restitution that is not preempted.

**V.     CONCLUSION**

        Plaintiffs' images and likenesses are their life.  They are entitled to proceed with their case into discovery.  For the foregoing reasons, Plaintiffs request this Court to deny Corbis' motion to dismiss, permit discovery to proceed, and set a trial date.

Dated: October 9, 2009                      Respectfully submitted,

                                            ROBBINS UMEDA LLP
                                            BRIAN J. ROBBINS
                                            KEVIN A. SEELY
                                            JAY N. RAZZOUK


                                                  s/Kevin A. Seely
                                            ─────────────────────────
                                                KEVIN A. SEELY

                                            600 B Street, Suite 1900
                                            San Diego  CA 92101
                                            Telephone: (619) 525-3990
                                            Facsimile:  (619) 525-3991

                                            GOLD & COULSON
                                            A Partnership of Professional and

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Limited Liability Corporations
ARTHUR S. GOLD
11 S. LaSalle St., Suite 2402
Chicago, IL 60603
Telephone: (312) 372-0777
Facsimile:  (312) 372-0778

JAY B. ROSS & ASSOCIATES, P.C.
JAY B. ROSS
838 West Grand Avenue
Chicago, IL 60622
Telephone: (312) 633-9000
Facsimile:  (312) 633-9090

Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and not a party to this action.  My business address is Robbins Umeda LLP, 600 B Street, Suite 1900, San Diego, CA 92101.

I hereby certify that on October 13, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 13, 2009, at San Diego, California.

_____
s/ Kevin A. Seely
KEVIN A. SEELY

434377