LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
KATHRYN J. FRITZ (CSB No. 148200)
kfritz@fenwick.com
HENRY Z. CARBAJAL III (CSB No. 237951)
hcarbajal@fenwick.com
LESLIE KRAMER (CSB No. 253313)
lkramer@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:   (415) 875-2300
Facsimile:    (415) 281-1350

Attorneys for Defendant
CORBIS CORPORATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ANNA MARIA ALBERGHETTI, BONNIE POINTER, and JUDY TENUTA, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CORBIS CORPORATION,<br><br>Defendant. | Case No.:  09-CV-05735-SVW (CWx)<br><br>**DEFENDANT CORBIS CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>Judge:  Hon. Stephen V. Wilson<br>Date:    October 26, 2009<br>Time:   1:30 p.m.<br>Place:   Courtroom No. 6 |

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

    I.    PLAINTIFFS DO NOT DISPUTE THEY ARE ATTEMPTING TO HALT DISPLAY, LICENSING AND DISTRIBUTION OF COPYRIGHTED PHOTOGRAPHS ...................................................... 2

    II.   PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT ............................................................................................ 3

        A.    A Finding of Express Preemption is Warranted ......................... 3

            1.    The "Rights" Alleged by Plaintiffs are Equivalent to Copyright Law ............................................................ 3

            2.    Plaintiffs' Claims Fall Within the Subject Matter of Copyright ............................................................................. 6

        B.    A Finding of Preclusion Based on Conflict Preemption is Warranted ......................................................................................... 9

    III.  PLAINTIFFS DO NOT CHALLENGE THE MOTION'S IDENTIFICATION OF NON-ACTIONABLE INCIDENTAL USES ..................................................................................................... 10

    IV.  PLAINTIFFS' ARGUMENTS APART FROM THE CONTENT OF THEIR COMPLAINT ARE UNAVAILING ........... 11

    V.   THE RESTITUTION/UNJUST ENRICHMENT CLAIM FAILS ................................................................................................... 12

CONCLUSION ......................................................................................................... 12

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alfano v. NGHT, Inc.*,
   623 F. Supp. 2d 355 (E.D.N.Y. 2009) .................................................... 10, 11

*Allison v. Vintage Sports Plaques*,
   136 F.3d 1443 (11th Cir. 1998) ................................................................ 10

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
   805 F.2d 663 (7th Cir. 1986) ...................................................................... 6

*Brown v. Ames,*
   201 F.3d 654 (5th Cir. 2001) ...................................................................... 7

*Butler v. Target Corp.*,
   323 F. Supp. 2d 1052 (C.D. Cal. 2004) ...................................................... 6

*Comedy III Prod., Inc. v. Gary Saderup, Inc.*,
   25 Cal. 4th 387, 106 Cal. Rptr. 2d 126 (2001) ........................................... 5

*Daboub v. Gibbons*,
   42 F.3d 285 (5th Cir. 1995) ..................................................................... 4, 6

*Del Madera Props. v. Rhodes & Gardner, Inc,*
   820 F.2d 973 (9th Cir. 1987) .................................................................... 12

*Downing v. Abercrombie & Fitch,*
   265 F.3d 994 (9th Cir. 2001) ...................................................................... 8

*Facenda v. N.F.L. Films, Inc.*,
   542 F.3d 1007 (3d Cir. 2008) ..................................................................... 7

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
   958 F.2d 896 (9th Cir. 1992) .................................................................... 10

*Hines v. Davidowitz,*
   312 U.S. 52, 61 S. Ct. 399, 85 L. Ed. 581 (1941) ....................................... 9

*KNB Enters. v. Matthews*,
   78 Cal. App. 4th 362, 92 Cal. Rptr. 2d 713 (2000) ..................................... 4

*Landau v. Cosmetic & Reconstructive Surgery Ctr., Inc.*,
   158 F.R.D. 117 (N.D. Ill. 1994) .................................................................. 3

*Laws v. Sony Music Ent., Inc.*,
   448 F.3d 1134 (9th Cir. 2006) ........................................................... 5, 6, 7, 8

*Maynard v. Bonta,*
   No. CV-02-06539, 2002 U.S. Dist. LEXIS 26728 (C.D. Cal. Dec.
   3, 2002) ....................................................................................................... 11

*Natkin v. Winfrey*,
   111 F. Supp. 2d 1003 (N.D. Ill. 2000) ......................................................... 5

*Olan Mills, Inc. v. Eckerd Drug of Tex., Inc.*,
   No. CA3-88-0333, 1989 U.S. Dist. LEXIS 13768 (N.D. Tex. Apr.
   21, 1989) ...................................................................................................... 6

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Salestraq America, LLC v. Zyskowski*,
  635 F. Supp. 2d 1178 (D. Nev. 2009) .............................................................. 10

*Selby v. New Line Cinema Corp.*,
  96 F. Supp. 2d 1053 (C.D. Cal. 2000) ................................................................ 6

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984) ...................................... 9

*Toney v. L'Oreal U.S.A., Inc.*,
  406 F.3d 905 (7th Cir. 2005) .............................................................................. 5

*Zacchini v. Scripps-Howard Broad. Co.*,
  433 U.S. 562, 97 S. Ct. 2849, 53 L. Ed. 2d 965 (1977) ...................................... 4

## **STATUTES**

17 U.S.C. § 101 ........................................................................................................ 5
17 U.S.C. § 102 ........................................................................................................ 7
17 U.S.C. § 106 ........................................................................................... 1, 3, 8, 10
Cal. Civil Code § 3344 ............................................................................................. 3

## **RULES**

Fed. R. Civ. P. 23 ................................................................................................... 11

## **OTHER AUTHORITIES**

1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT
  § 1.01 (Matthew Bender, Rev. Ed.) .................................................................... 6

# INTRODUCTION

The opening sentence in the Opposition's statement of the case distills those acts about which Plaintiffs complain: Corbis uses Plaintiffs' "names, images, and likenesses on its websites to sell licenses to copyrighted photographs which contain images of Plaintiffs." Opp. at 2:4-7.[1] Plaintiffs' Complaint equates *any* sale of these copyright licenses with unlawful appropriation of Plaintiffs' "names, images, and likenesses." *Id.* As pled, the very process of display and distribution of the licensed work—in and of itself and without more—constitutes the alleged invasion of Plaintiffs' right of publicity. However, the Complaint's theory collides head long with the exclusive rights conferred on Corbis by the Copyright Act, including the Section 106 rights of display, reproduction and distribution. The preemption provision of the Copyright Act and the doctrine of conflict preemption preclude such intrusion of state law claims into the rights specified by the federal statute.

Accepting Plaintiffs' claims would erase this demarcation and effect a radical rewriting of applicable law. For under Plaintiffs' theory, no copyrighted photograph of any recognizable individual can be displayed, reproduced or distributed without her consent; each subject of each photograph has a veto over *all* distribution of any copyrighted image; and each must be contacted or provide consent before a copyright holder may exercise its exclusive rights. The *de facto* result of these unprecedented rules would transfer ownership and control of copyrighted photographs from copyright holders to individuals like Plaintiffs, who have no copyrights in these works.

Plaintiffs' Opposition at times attempts to confuse the issue by invoking the specter of hypothetical end uses by Corbis' licensees. But their *Complaint* has nothing to do with licensees' end uses, nor with any theory by which Corbis might

---

[1] The Corrected Plaintiffs' Memorandum of Law in Opposition to Defendant Corbis Corporation's Motion to Dismiss, Dkt. No. 26, is referred to herein as the "Opposition" or "Opp."

CORBIS' REPLY MEMO. ISO
MOTION TO DISMISS                      1                      CASE NO. 09-CV-05735-SVW (CWx)

be liable for them. This is an action, on behalf of a purported nationwide class, claiming *Corbis'* mere display and license of copyrighted works violates the Plaintiffs' right of publicity. Indeed, Plaintiffs already filed a motion to certify that class. Dkt. No. 29, Pls.' Memo. of Law in Supp. of Mot. for Class Cert. That motion, like their Complaint, depends on the premise that it matters not to whom or how Corbis licenses its copyrighted works, nor whether Plaintiffs have already been paid by the licensee, since *any* profit from *any* distribution by Corbis allegedly infringes their publicity rights. *Id*. at 15:19-22 & 20:4-6. Moreover, this generic attack on Corbis' distribution of its copyrights is the lynchpin of Plaintiffs' class theory: any class claim that turned on the licensees' end uses would fail for lack of commonality, as liability would hinge on the subtle issues inherent in determining whether every separate end use entitled any Plaintiff to compensation.

    Plaintiffs' right of publicity might be implicated if a transferee/licensee made a commercial use of a Plaintiff's image, but not from the copyright owner's mere exercise of its exclusive right to display, reproduce or distribute its copyrighted works. Corbis' motion to dismiss should be granted, without leave to amend.

## ARGUMENT

**I.   PLAINTIFFS DO NOT DISPUTE THEY ARE ATTEMPTING TO HALT DISPLAY, LICENSING AND DISTRIBUTION OF COPYRIGHTED PHOTOGRAPHS.**

Plaintiffs' Opposition concedes each of the following critical points:

- Corbis licenses copyrighted works,[2] expressly disclaiming any grant of publicity rights (Complaint ¶¶ 19-20; Dkt. No. 19, Corbis' Request for Judicial Notice ("RFJN"), Ex. 1 at 7 § 10, Ex. 2 at 8 & Ex. 3 at 14);
- Plaintiffs' theory of liability rests on the idea that mere display and

---

[2] In a footnote, Plaintiffs half-heartedly challenge whether Corbis is a copyright owner at all. Opp. at 2 n.2. Corbis is not required by the copyright law to hold copyright registrations to *defend* against this suit. Nevertheless, this Court may take judicial notice of the scores of copyright registrations Corbis holds that cover its image library. *See* Corbis' Reply Request for Judicial Notice, Exs. 1-3.

distribution of those copyrighted works violates their rights of publicity (Complaint ¶¶ 21-23, 38 & 45);

- The relief Plaintiffs seek is to enjoin and receive damages for any display or distribution by Corbis, on the theory that Corbis making a profit by the exercise of Section 106 rights entitles Plaintiffs to compensation (Complaint, Prayer for Relief, §§ C-I);

- Plaintiffs' theory would purport to apply not just to these three Plaintiffs or to celebrities with public recognition, but to *every* recognizable individual to which California Civil Code Section 3344 grants publicity rights (Complaint ¶¶ 28 & 34); and

- Plaintiffs' theory would apply not just to licenses by the stock photography industry online, but to *any* sales by photographers, since *any* sale of a license to a photograph in which an individual appears would be a commercial use of a "likeness," regardless of the end use by the licensee. *See* Opp. at 4:14-17.

To be sure, Plaintiffs want control of, and remuneration for, every display, reproduction and distribution of photographs depicting them. But this not only implicates the copyright laws, it would directly subvert them. It is well-established that the copyright owner is the only one who "may transfer rights to [a] copyrighted work. . . ." *Landau v. Cosmetic & Reconstructive Surgery Ctr., Inc.*, 158 F.R.D. 117, 119 (N.D. Ill. 1994). Recognizing Plaintiffs' claims would wrest transfer rights from copyright holders and give them to the person(s) depicted. The preemption doctrines of the Copyright Act prevent this usurpation.

## II. PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT.

### A. A Finding of Express Preemption is Warranted.

#### 1. The "Rights" Alleged by Plaintiffs are Equivalent to Copyright Law.

The Opposition offers no probative rebuttal to the equivalence of the

1  Complaint's asserted rights to rights under copyright.[3] Plaintiffs argue that their
2  rights in "names and likenesses" may be distinct from copyrighted material—a
3  proposition that may be unexceptional in the abstract, or in certain promotional
4  contexts. Opp. at 6:18-22. But Plaintiffs emphasize the semantics rather than the
5  substance and context in which their likenesses are found here. Their claim is quite
6  simple and absolute: that Corbis' exercise of its copyrights – the display and
7  distribution of the works – without more violates their right of publicity. When a
8  state law claim amounts to no more than a complaint about a copyright holder's
9  exercise of rights, the claim is preempted. *See KNB Enters. v. Matthews*, 78 Cal.
10 App. 4th 362, 372, 92 Cal. Rptr. 2d 713, 721 (2000) ("As between the exclusive
11 copyright holder and any . . . person who appears in the copyrighted work, the latter
12 may not preclude the former from exercising the rights afforded under the exclusive
13 copyright by claiming a violation of the right of publicity.") (emphasis omitted).
14 Plaintiffs cannot avoid preemption by simply parroting the language of state law
15 claims when the substance of their claim is the equivalent of the copyright law.
16 *Daboub v. Gibbons*, 42 F.3d 285, 290 (5th Cir. 1995) ("ventriloquist's attempt to
17 present a copyright action in the voice of state law claims . . . [,]" unavailing).

18  Plaintiffs contend that Corbis' recognition of a distinction between publicity
19 rights, which Corbis does not generally distribute, and copyright licenses, which it
20 does, means that Plaintiffs' claims are not equivalent. This makes no sense. The
21 issue is not whether Corbis recognizes that it does not license rights of publicity,
22 but whether the acts which Plaintiffs contend violate their rights of publicity—here,
23 display, distribution and reproduction—are the same as copyright interests. *See*

---

[3] *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 97 S. Ct. 2849, 53 L. Ed. 2d 965 (1977), provides no assistance to Plaintiffs. *Zacchini* did not discuss the intersection of copyrights and the right of publicity at all. Rather, the Court held that the news organization's broadcast of the entirety of the plaintiff's cannonball act was not protected by the First and Fourteenth Amendments. *Id.* at 563-64. By appropriating the entire act, the defendant made use of the plaintiff's persona. *Id.* at 575-76. *Zacchini* does not address the issues in Corbis' motion.

1  *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1144 (9th Cir. 2006) ("Although the
2  elements of Laws's state law claims may not be identical to the elements in a
3  copyright action, the underlying nature of Laws's state law claims is part and parcel
4  of a copyright claim."). Because they are, Plaintiffs' claims are equivalent and
5  therefore preempted.

6        Plaintiffs unpersuasively argue that the Seventh Circuit's *Toney* case should
7  control in this instance. But in *Toney*, the use of the photograph depicting the
8  plaintiff was not merely the distribution or reproduction of the copyrighted work,
9  but was use of the likeness for promotional purposes, namely placement of the
10 photograph on packages to sell hair-care products. *Toney v. L'Oreal U.S.A., Inc.*,
11 406 F.3d 905, 907, 910 (7th Cir. 2005). *See also* Motion at 11:8-12:3
12 (distinguishing *Toney* and other cases).

13       Nor does *Comedy III Productions, Inc. v. Gary Saderup, Inc.,* 25 Cal. 4th
14 387, 106 Cal. Rptr. 2d 126 (2001), assist Plaintiffs. First, that decision does not
15 address preemption at all and therefore cannot be authority on that issue. Nor does
16 it involve a challenge to the licensing of a copyright. At issue was whether the
17 defendant appropriated the plaintiffs' right of publicity by placing the Three
18 Stooges' images on t-shirts and lithographs which defendants themselves sold
19 outright. *Comedy III*, 25 Cal. 4th at 393, 106 Cal. Rptr. 2d at 131. Again, the case
20 involved a party making use of an image to sell something else.

21       After failing to distinguish the pertinent case authorities addressing
22 preemption, Plaintiffs next attempt to graft a bizarre requirement that a
23 photographer must obtain their consent before a work can be fixed in a tangible
24 form under 17 U.S.C. § 101, seemingly claiming that they are somehow "author[s]"
25 of the photographs, presumably because they appear in them. Opp. at 17:23-18:9.
26 This argument demonstrates a profound misunderstanding of the copyright law. It
27 is axiomatic that, with respect to a photograph of a person, the *photographer* is the
28 author under copyright law, not the person depicted. *See Natkin v. Winfrey*, 111 F.

CORBIS' REPLY MEMO. ISO        5      CASE NO. 09-CV-05735-SVW (CWx)
MOTION TO DISMISS

1  Supp. 2d 1003, 1011 (N.D. Ill. 2000); *Olan Mills, Inc. v. Eckerd Drug of Tex., Inc.*,
2  No. CA3-88-0333, 1989 U.S. Dist. LEXIS 13768, at *4 (N.D. Tex. Apr. 21, 1989)
3  ("The simple fact that an individual brings his own image to the studio is not
4  enough to give that person a protectable property right in [a] portrait."). Plaintiffs'
5  consent to being photographed is not relevant to the preemption analysis. Whether
6  Plaintiffs' claims are preempted turns on whether they concern conduct beyond the
7  exercise of copyrights. *See Laws*, 448 F.3d at 1144-45; *Daboub*, 42 F.3d at 290;
8  *Butler v. Target Corp.*, 323 F. Supp. 2d 1052, 1056-57 (C.D. Cal. 2004).

### 2. Plaintiffs' Claims Fall Within the Subject Matter of Copyright.

Plaintiffs likewise fail to rebut the salient points made by Corbis on the subject matter preemption prong. Plaintiffs proffer the argument that because they have no valid copyright interest, they cannot state a preempted claim. Opp. at 11:3-9. This is a non-sequitur. Plaintiffs' lack of copyright interests means only that Plaintiffs may not *assert* a copyright infringement claim; it says nothing about whether their state law claims are preempted. Thus, "scope and protection [with respect to the Copyright Act] are not synonymous. . . . [T]he shadow actually cast by the Act's preemption is notably broader than the wing of its protection." *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1058 (C.D. Cal. 2000) (internal quotations and citation omitted). "[A] work that by reason of its content falls 'within the subject matter of copyright as specified by Sections 102 and 103' falls within the ambit of federal pre-emption, even if it happens to be ineligible for federal protection." 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 1.01[B][2] (Matthew Bender, Rev. Ed.) (footnote omitted). In fact, in none of the cases where plaintiffs' right of publicity claims were held to be preempted did plaintiffs have any copyright interests. *See, e.g., Laws*, 448 F.3d at 1144 (copyright owned by record company, not plaintiff singer); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 676 (7th Cir. 1986)

1 (copyright owned by Major League Baseball, not players). What matters is whether the subject matter of the claim – here the photographic images in which Plaintiffs appear – falls within the subject matter of copyright. As a type of pictorial work, photographs are clearly copyrightable subject matter. *See* 17 U.S.C. § 102(a)(5).

Plaintiffs try to skirt this obvious obstacle to their Complaint with the statement that a "persona" is generally not within the subject matter of copyright. Opp. at 11:21-28. However, in every case Plaintiffs cite, the use of a "persona" that formed the basis for the plaintiff's claim involved something more than mere distribution of a copyrighted work. Motion at 12:15-13:26. Plaintiffs do not refer to a single case in which display or license of a photograph, without ancillary use of the persona for promotional purposes, avoided preemption. Nor do they have any satisfactory answer to *Brown v. Ames,* 201 F.3d 654, 660-61 (5th Cir. 2001), which made clear that only unauthorized use of copyrighted works as such, not use by the *authorized* copyright owner, could avoid preemption.[4]

Plaintiffs' argument that claims to "persona" fall inherently (and automatically) outside the subject matter of copyright proves too much. If true, that would mean that no right of publicity claim would ever be preempted, but the case law reflects the contrary. As the *Laws* court makes clear, the test for preemption hinges on what use is made of the copyrighted work, and particularly whether the entirety of the alleged misappropriation is embodied in the rights in the copyrighted medium. *See Laws*, 448 F.3d at 1141. Thus, *Laws* distinguished between preemption of a claim based on reproduction of a sound recording of the plaintiff's

---

[4] Plaintiffs' citation to *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007 (3d Cir. 2008), does not support Plaintiffs' argument. In *Facenda*, the defendants used sound clips of the plaintiff's voice, lifted from a defendant's copyrighted work, to promote a video game. *Id.* at 1012. That the court found the use of the plaintiff's voice in unauthorized advertising was not preempted underscores the authority cited by Corbis. *Id.* at 1030. Moreover, *Facenda* makes clear that the proposed framework discussed therein refers to cases "at the intersection of copyright, the right of publicity, and contract." *Id.* at 1029. Plaintiff's *contract* with one of the defendant's precluded use of his voice in an "endorsement of any product or service." *Id.* at 1012.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

voice, and non-preemption of claims based on *imitation* of a plaintiff's voice, the latter case involving something *more* than the reproduction of an actual copyrighted work. *Id.* at 1140-41.

Similarly, *Laws* distinguished the plaintiff's preempted claims relating to reproduction of a sound recording of her voice from the non-preempted use of a photograph for advertising purposes in *Downing v. Abercrombie & Fitch,* 265 F.3d 994 (9th Cir. 2001):

> But Abercrombie had not merely published the photograph. Rather, it published the photo in connection with a broad surf-themed advertising campaign, identified the plaintiffs-surfers by name, and offered for sale the same t-shirts worn by the plaintiffs in the photo. By doing so, it had suggested that the surfers had endorsed Abercrombie's t-shirts. Accordingly, we concluded that "it is not the publication of the photograph itself, as a creative work of authorship, that is the basis for [plaintiffs'] claims, but rather, it is the use of the [plaintiffs'] likenesses and their names pictured in the published photograph."

*Laws*, 448 F.3d at 1141 (citation omitted).

Thus, the Ninth Circuit has recognized that a claim that involves the mere exercise of an exclusive copyright in a work falls within the subject matter of copyright and is preempted (*see Laws*, 448 F.3d at 1142-43), while a claim that involves uses beyond the exercise of those rights falls outside the subject matter and is not. *See Downing,* 265 F.3d at 999-1000 & 1004-1005. Here, the claims are based on nothing other than Corbis' display, reproduction and distribution of its copyrighted works.[5] The claims fail to allege actual use of names, images and

---

[5] Plaintiffs' assertion that Corbis' use of the copyrighted photographs comprises an effort to promote the sale of a separate product, "the licenses," is conclusory, circular and unconvincing. Opp. at 13:3-9. The offering of copyright licenses is plainly equivalent to the Section 106 distribution right. If Plaintiffs contend that the *display* of the photographs is used to promote the protected sale of licenses, that is an archetypal incidental use that is not actionable. *See* Section III, *infra*.

CORBIS' REPLY MEMO. ISO MOTION TO DISMISS | 8 | CASE NO. 09-CV-05735-SVW (CWx)

likenesses sufficient to fall outside the subject matter of copyright.

Accordingly, Plaintiffs' common law and statutory right of publicity claims are expressly preempted by the Copyright Act.

### B. A Finding of Preclusion Based on Conflict Preemption is Warranted.

Plaintiffs concede that a state law claim that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" with regard to the Copyright Act is subject to conflict preemption. *See Hines v. Davidowitz*, 312 U.S. 52, 67-68, 61 S. Ct. 399, 404, 85 L. Ed. 581, 587 (1941). Plaintiffs also do not dispute that one of the core objectives of the Act is the public dissemination of copyrighted works. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429, 104 S. Ct. 774, 782, 78 L. Ed. 2d 574, 584 (1984). Nor do they dispute that their request for a decree that Corbis "has no right to use, exploit, publish, distribute, copy, advertise, license or transmit in any form Plaintiffs' . . . names, images, and likenesses . . ." would directly conflict with this purpose. *See* Complaint, Prayer for Relief, § C. Plaintiffs have no answer for the fact that their legal theory would preclude ***any*** photographer, not just stock photography licensors like Corbis, from displaying or distributing any copyrighted photograph that contains a recognizable person (Complaint ¶¶ 21, 24, 38, 45 & 47)—something that agencies like Corbis have been doing for some 100 years without any Court having questioned their legality.

Plaintiffs nevertheless contend that they merely seek to prevent Corbis from exercising its rights for a "commercial, for-profit purpose" and this is no obstacle to accomplishment of Congress's objectives. Opp. at 19:15-17. But Plaintiffs' novel distinction between profit and non-profit is absent from the copyright law. Indeed, the copyright scheme presupposes that the copyright holder will be recompensed, and recognizes this as the incentive to make distributions to the public. *Sony Corp. of Am.*, 464 U.S. at 429, 104 S. Ct. at 782, 78 L. Ed. 2d at 584.

1    Citing no authority contrary to the proposition that conflict preemption
2  applies here,[6] Plaintiffs seek to distinguish *Allison v. Vintage Sports Plaques*, 136
3  F.3d 1443 (11th Cir. 1998), because it involves the first sale doctrine rather than the
4  Section 106 rights to display or distribute. That context does not negate *Allison*'s
5  force. As the celebrities in *Allison* could not use right of publicity claims to
6  eviscerate first sale rights conveyed by the copyright law, Plaintiffs cannot use such
7  rights here to eviscerate Corbis' right to display and distribute its copyrighted
8  works without upsetting the balance between public access and celebrity rights. *Id*.
9  at 1448-49. Plaintiffs offer no substantive response to *Allison* or to the proposition
10 that conflict preemption precludes Plaintiffs' right of publicity claims.

### III. PLAINTIFFS DO NOT CHALLENGE THE MOTION'S IDENTIFICATION OF NON-ACTIONABLE INCIDENTAL USES.

Plaintiffs' Opposition does not dispute that a use of the image that is incidental to a protected use is not actionable. Motion at 19:15-21:21. Nor do they dispute that display on Corbis' website for potential customers to see is incidental to its distribution of copyright licenses. *Id.*; *see also Alfano v. NGHT, Inc*., 623 F. Supp. 2d 355, 361-62 (E.D.N.Y. 2009). Plaintiffs attempt to dismiss *Alfano*'s significance on the basis that the court applied New York law, which contained a special exemption for the transfer of a photograph for use in a lawful manner, which applied to the transfer in that case. Opp. at 22:14-23:28. However, Plaintiffs ignore the point of *Alfano* that applies here – the court also found that Corbis' display of images on its website was a protected use because it was incidental to the

---

[6] *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc*., 958 F.2d 896 (9th Cir. 1992), provides no assistance to Plaintiffs. In that case, a plaintiff's conversion claim involving copying and reuse of airworthiness certificates to obtain government approval for defendant's plane's airworthiness was held not preempted by the copyright law. *Id*. at 899-900 & 904. In contrast, in this case, Plaintiffs allege no use of photographs aside from exercise of exclusive copyrights. *Salestraq America, LLC v. Zyskowski*, 635 F. Supp. 2d 1178, 1179-80 (D. Nev. 2009) is also inapposite, as it involved defendant's alleged use of the plaintiff's collection of data on residential properties to form a competing subscription website, rather than a right of publicity claim against a copyright holder for exercising copyrights.

CORBIS' REPLY MEMO. ISO
MOTION TO DISMISS                        10                    CASE NO. 09-CV-05735-SVW (CWx)

lawful transfer. *Alfano*, 623 F. Supp. 2d at 362. Nothing in the Opposition rebuts this point. Thus, Corbis' display of works in order to license copyrights cannot constitute actionable conduct.[7]

## IV. PLAINTIFFS' ARGUMENTS APART FROM THE CONTENT OF THEIR COMPLAINT ARE UNAVAILING.

There is a pervasive disconnect between what Plaintiffs argue at points in their Opposition and what their action actually alleges.[8] For example, Plaintiffs' Opposition asserts that some licensees of Corbis may be fans, collectors or commercial users who should not be insulated from paying fees for right of publicity licenses. Opp. at 8:20-23, 9:4-6, 20:15 & 21:1-2. Nowhere in the Complaint is the conduct or identity of any licensee of any of Corbis' copyrights alleged, mentioned or discussed. The Complaint does not condition its allegations against Corbis on the nature of the end use or the identity of any licensees. If Plaintiffs suggest that Corbis should be liable based on what its licensees do or do not do, or what publicity rights they may or may not purchase (Opp. at 8:21-9:9, 20:19-25 & 23:17-28), this allegation is not in Plaintiffs' Complaint either. Nor could it be, since a complaint dependent on the nature of every individual end use, and on whether or not the end user had paid for publicity rights, could not possibly pass muster as a class action. *See generally* Fed. R. Civ. P. 23(a)(2) & (b)(3).

Instead, this action alleges that "[b]y selling the said licenses, Corbis has been using Plaintiffs' and the other Class members' names, images, and likenesses." Complaint ¶ 21. This action seeks to enjoin any display or distribution, for any purpose, which occurs without Plaintiffs' consent. Complaint, Prayer for Relief, §§ C & H. This action claims that Corbis' operation of its

---

[7] Plaintiffs have not disputed that a search function that allows searches by Plaintiffs' names in conjunction with the copyrighted pictures is a non-actionable incidental use. Motion at 21:10-21.
[8] To the extent they are inconsistent, the allegations of Plaintiffs' Complaint control for purposes of this motion. *E.g., Maynard v. Bonta*, No. CV-02-06539, 2002 U.S. Dist. LEXIS 26728, at *66 n. 77 (C.D. Cal. Dec. 3, 2002).

CORBIS' REPLY MEMO. ISO MOTION TO DISMISS — 11 — CASE NO. 09-CV-05735-SVW (CWx)

1  website offends Plaintiffs' rights because Corbis' use is "purely capitalistic in
2  nature[,]" regardless of the licensees' activities. *Id*. ¶ 24. Thus, Plaintiffs'
3  arguments pertaining to hypothetical end uses and end users are irrelevant to this
4  action.

5  The Opposition also tries to recharacterize Corbis' licensing activity as
6  "selling . . . photographs," a purported tangible good, hoping to move the activity
7  outside the bounds of their copyrights. Opp. at 4:3-4 & 20:11-13. But this is both
8  misguided and unavailing. Corbis is not a retailer of tangible goods; it licenses its
9  copyrighted digital images. RFJN, Ex. 1, at 6 § 3(b)-(c). Indeed, Plaintiffs' own
10 Complaint knows better. It recognizes consistently that "Corbis provides images on
11 its websites that can be <u>*licensed*</u>" (Complaint ¶ 16), customers "can . . . *buy a*
12 *license to use* any image on the Corbis website" (*Id*. ¶ 19) and that "Corbis sells the
13 unauthorized *licenses*." *Id*. ¶ 24 (emphases all added). The attempt to transform
14 Corbis' licensing activity into actionable promotion or sale of ancillary goods fails.

15 **V.    THE RESTITUTION/UNJUST ENRICHMENT CLAIM FAILS.**

16 Plaintiffs do not contest that if their right of publicity claims are preempted,
17 their restitution/unjust enrichment claim, which mirrors their publicity claims, is
18 likewise preempted. *See Del Madera Props. v. Rhodes & Gardner, Inc,* 820 F.2d
19 973, 976 (9th Cir. 1987). As Plaintiffs' right of publicity claims are precluded by
20 copyright preemption, its restitution/unjust enrichment claim fails as well.

21                              **CONCLUSION**

22 For the foregoing reasons, Corbis respectfully requests that the Court grant
23 its Motion to Dismiss in its entirety, find that Plaintiffs' claims are preempted by
24 the Copyright Act and dismiss Plaintiffs' claims without leave to amend.

25 Dated:  October 16, 2009         FENWICK & WEST LLP

26                                  By: /s/ *Laurence F. Pulgram*
                                          Laurence F. Pulgram
27                                  Attorneys for Defendant
                                    CORBIS CORPORATION
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO