UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA MARIA ALBERGHETTI, BONNIE POINTER, and JUDY TENUTA, on Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>CORBIS CORPORATION,<br><br>    Defendant. | CV 09-5735 SVW (CWx)<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS [17] |

## I. INTRODUCTION

Plaintiffs' complaint alleges that Defendant has misappropriated Plaintiffs' statutory and common law rights of publicity by using Plaintiffs' names, images, and likenesses without Plaintiffs' permission. Plaintiff also asserts a related unjust enrichment/ restitution claim. Defendant's Motion to Dismiss asserts that Defendant's copyrights in the allegedly infringing work trump Plaintiffs' rights of publicity.

**II. FACTS**

Plaintiffs are Anna Maria Alberghetti, Bonnie Pointer, and Judy Tenuta, who are artists/entertainers who have worked in a variety of mediums. Defendant Corbis Corporation is a photo-licensing company incorporated in Nevada and headquartered in Washington state.

On its website, Defendant provides a catalog of available photographs. The website's users can purchase a license to use those photographs. Plaintiffs allege that their photographs and names are included in this online catalog.

As part of its licensing agreement, Defendant notifies its licensees that they are only licensing the copyright to use the image, and that they may have to obtain the additional rights in order to display and use the images. Defendant's agreement specifically notes that licensees may have to obtain licenses to use the photo subjects' rights of publicity.

The essence of Plaintiffs' claim, however, is not that Defendant's *users* are infringing on Plaintiffs' publicity rights. Plaintiffs are claiming that *Defendant itself* is infringing on Plaintiffs' rights by providing a searchable catalog of its photo database.[1] This catalog connects Plaintiffs' names and images to the underlying product offered by Defendant (copyright licenses). Defendant's use of the names and images helps Defendant sells its photo copyright licenses to its users.

///

---

[1] Because Plaintiffs' claims relate to *Defendant*'s use of Plaintiffs' names, likenesses, and images, the Court DENIES Defendant's request that the Court take judicial notice of the contents of its website. Defendant's *user* agreements are irrelevant to the issues at hand.

2

In this Motion, Defendant asserts three arguments: first, that the Copyright Act expressly preempts Plaintiffs' state law claims; second, that the Copyright Act preempts Plaintiffs' state law claims through application of conflict preemption; and third, that Defendant's uses of Plaintiffs' names, personas, and likenesses are "incidental" to Defendant's lawful uses of its copyrights.

**III. LEGAL STANDARDS**

    **A.   MOTION TO DISMISS**

The plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id.; see also Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) (citing Iqbal, 129 S.Ct. at 1951).

    **B.   RIGHTS ASSERTED BY PLAINTIFFS**

"California has long recognized a common law right of privacy for protection of a person's name and likeness against appropriation by others for their advantage. To sustain a common law cause of action for commercial misappropriation, a plaintiff must prove: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of

plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury. <u>Downing v. Abercrombie & Fitch</u>, 265 F.3d 994, 1001 (9th Cir. 2001) (citing <u>Eastwood v. Super. Ct.</u>, 149 Cal. App. 3d 409, 416-17 (1983)) (internal quotations omitted).

"In addition to the common law cause of action, California has provided a statutory remedy for commercial misappropriation under California Civil Code § 3344. The remedies provided for under California Civil Code § 3344 complement the common law cause of action; they do not replace or codify the common law. Section 3344 provides in relevant part, 'any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner . . . for purposes of advertising . . . without such person's prior consent . . . shall be liable for any damages sustained by the person.' Under section 3344, a plaintiff must prove all the elements of the common law cause of action. In addition, the plaintiff must allege a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose." <u>Downing</u>, 265 F.3d at 1001 (internal citations omitted).

Defendant has reserved all issues surrounding the construction of the California statutory and common law rights, and is moving solely on the ground of Copyright preemption and "incidental use." (Def.'s Motion at 17 n.3.)

///
///
///
///

4

**IV.  ANALYSIS**

    **A.  EXPRESS COPYRIGHT PREEMPTION**

Section 301(a) of the Copyright Act preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106" and "in works of authorship that . . . come within the subject matter of copyright as specified by sections 102 and 103."  17 U.S.C. § 301(a).  Section 301(b) clarifies that "Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to . . . subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103."  Id. at § 301(b).  Congress has explained that "[t]he intention of section 301 is to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works within the scope of the Federal copyright law."  Laws v. Sony Music Ent., Inc., 448 F.3d 1134, 1137 (9th Cir. 2006) (quoting H.R. Rep. No. 94-1476, at 130 (1976)).

The Ninth Circuit applies a two-part test to determine whether a state law claim is preempted by § 301 of the Copyright Act:

> We must first determine whether the "subject matter" of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103.  Second, assuming that it does, we must determine whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders.

///

1  Id. at 1137-38 (internal footnotes omitted) (citing Downing v.
2  Abercrombie & Fitch, 265 F.3d 994, 1003 (9th Cir. 2001)).  Both prongs
3  of this test must be satisfied in order for the state-law claim to be
4  preempted.  Downing, 265 F.3d at 1003.
5      Applying this two-part test to Plaintiffs' claims, it is clear
6  that the rights asserted by Plaintiffs are not preempted.  Simply put,
7  Plaintiffs' rights do not fall within the subject matter of copyright.
8  In light of that conclusion, Plaintiffs' rights cannot be equivalent to
9  the rights contained in 17 U.S.C. § 106.  See Downing, 265 F.3d at 1005
10 ("Because the subject matter of the Appellants' statutory and common
11 law right of publicity claims is their names and likenesses, which are
12 not copyrightable, the claims are not equivalent to the exclusive
13 rights contained in § 106.").
14     A situation similar to the present case occurred in Downing.
15 Abercrombie purchased a photograph of appellant surfers at a 1965
16 surfing competition from a photographer, who owned the copyright.  Id.
17 at 1000.  Abercrombie then published the photo in their catalogue, with
18 appellants' names but without appellants' permission.  Id. at 1000.
19 The surfers filed state misappropriation claims.  Id.  Abercrombie
20 argued, as Defendant does now, complete federal preemption over the
21 state law claims.  Id. at 1003.  The Ninth Circuit held that the
22 claims were not preempted because the subject matter of the publicity
23 claims was the appellants' names and likenesses, which is not a work of
24 authorship within Section 102 of the Copyright Act.  Id. at 1004.  The
25 Court reasoned that while the photograph falls within copyright subject
26 matter, "it is not the publication of the photograph itself, as a
27 creative work of authorship, that is the basis for Appellants' claims,
28

6

but rather, it is the use of the Appellants' likenesses and their names pictured in the published photograph." Id. at 1003. The subject matter of a right to publicity claim is "the very identity or persona of the plaintiff as a human being." Id. at 1004 (citing McCarthy, Rights of Publicity and Privacy §11.13[C] at 11-72-73 (1997)). The subject matter of a right to publicity claim, the name or likeness, "does not become a work of authorship simply because it is embodied in a copyrightable work." Id. at 1003-4 (citing Nimmer on Copyright §1.01[B][1][c] at 1-23 (1999)).

Downing approved of the California Court of Appeal's decision in KNB Enterprises v. Matthews, 78 Cal. App. 4th 362 (2000). Downing, 265 F.3d at 1005. In KNB, the defendant copied erotic photographs from the internet and, without authorization of the individuals depicted in the photos, posted them on his own commercial website. KNB, 78 Cal. App. 4th at 366. The court determined that preemption did not apply "because a human likeness is not copyrightable, even if captured in a copyrighted photograph." Id. at 365.

The present case falls directly within the ambit of Downing, and Defendant fails to distinguish Downing. Downing is therefore controlling.

In applying Downing to the present case, it is clear that this case is distinguishable from Fleet v. CBS, 50 Cal. App. 4th 1911, 1919 (1996) and Laws v. Sony Music Ent., Inc., 448 F.3d 1134, 1138-43 (9th Cir. 2006). Both of those cases involved publicity claims arising out of the claimant's *copyrightable* (and, in fact, *copyrighted*) performance in a copyrighted work. Fleet involved actors who had performed in a film — that is, a "dramatic work" "fixed in a tangible medium of

7

expression" within the meaning of the Copyright Act.  <u>Laws</u> involved a singer who had performed in a music recording — that is, a "sound recording" "fixed in a tangible medium of expression" within the meaning of the Copyright Act.  <u>See</u> <u>Laws</u>, 448 F.3d at 1142-43 ("Laws does not dispute Sony'[s] contention that [her] recording of [the song] 'Very Special' was a copyrighted sound recording fixed in a tangible medium of expression. . . . [T]he entirety of the allegedly misappropriated vocal performance is contained within a copyrighted medium.");[2] <u>Fleet</u>, 50 Cal. App. 4th 1911, 1919 ("We agree that as a general proposition section 3344 is intended to protect rights which cannot be copyrighted and that claims made under its provisions are usually not preempted.  But appellants' analysis crumbles in the face of one obvious fact: their individual performances in the film White Dragon were copyrightable. Since their section 3344 claims seeks only to prevent CBS from reproducing and distributing their performances in the film, their claims must be preempted by federal copyright law.").

Here, in contrast to <u>Laws</u> and <u>Fleet</u>, the object that is "fixed in a tangible medium of expression" is the physical likeness and persona of the Plaintiffs.  Name, likeness, and persona are not copyrightable subject matter, both under the Copyright Act and the Copyright Clause

---

[2] In distinguishing <u>Downing</u>, the <u>Laws</u> court discussed <u>Downing</u> as involving a "suggest[ion] that the surfers had endorsed Abercrombie's t-shirts." <u>Laws</u>, 448 F.3d at 1141. The <u>Laws</u> court's dictum does not override the substantive reasoning employed by the <u>Downing</u> court. To the extent that <u>Laws</u> attempted to reinterpret <u>Downing</u> as a false endorsement claim, <u>Laws</u> is not controlling here. The principle of stare decisis requires this Court to apply the reasoning and holding of <u>Downing</u>, which is directly on point.
    The Court believes that the present case "is squarely controlled by the surfers' case [<u>Downing</u>] and not the singer's [<u>Laws</u>]." <u>Bonner v. Fuji Film</u>, No. C 06-4374 (N.D. Cal. Nov. 13, 2006).

of the Constitution. A name, likeness, or persona is not a work of "authorship" entitled to copyright protection. See Downing, 265 F.3d at 1003-05; see also Toney v. L'Oreal USA, Inc., 406 F.3d 905 (7th Cir. 2005) (holding no preemption where photo model asserted right of publicity claim against photo copyright holder); Brown v. ACMI Pop Div., 873 N.E. 2d 954, 962-63 (Ill. App. 2007) (holding that right of publicity claim under Illinois law regarding Corbis's display of photos on its webpage in connection with sale of licenses was not preempted by Copyright Act). Therefore, Plaintiffs' claims are not preempted by the Copyright Act.

### B. CONFLICT PREEMPTION

Defendant argues that, even if Plaintiffs' claims are not encompassed within the express preemption provision of 17 U.S.C. § 301(a), the principles of conflict preemption require this Court to dismiss Plaintiffs' claims.

Conflict preemption prevents an application of state law that "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67 (1941). "[W]hen state law touches upon the area of federal statutes enacted pursuant to constitutional authority, 'it is "familiar doctrine" that the federal policy "may not be set at naught, or its benefits denied" by the state law.'" Kewanee Oil v. Bicron Corp., 416 U.S. 470, 479-80 (1974) (quoting Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 229 (1964)).

///

///

///

Defendant's argument overlooks the fact that the two-part § 301(a) express preemption test is the *exclusive* source of Copyright preemption. Section 301(b) provides that:

> Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to--
>
> (1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or . . .
>
> (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

17 U.S.C. § 301(b)(1), (3). In other words, unless the state law is preempted by § 301(a), it is unaffected by the Copyright Act.

Thus, despite Defendant's rather compelling parade of horribles,[3] this Court is not empowered to use conflict preemption to prevent Plaintiffs from bringing their claims.

///
///
///

---

[3] Defendant asserts that a ruling in Plaintiffs' favor:
> would prohibit any photographer from *ever* displaying, reproducing or transferring (by sale and/or license) her photographs if they happened to include a human being. For example, under Plaintiffs' theory, it is not the retailer in <u>Downing</u> that would be precluded from using the surfers' photograph, it is the photographer who would be precluded from selling the photo to *anyone* — simply because it had a person's image in it. The ramification of Plaintiffs' claims is that *any* display and license of a photograph in which they — or any human being — appears violates the right of publicity. (Mot. at 14.)

10

C.  **FIRST AMENDMENT-PROTECTED USE**

Defendant's final argument is that its use of Plaintiffs' names, images, and likenesses is "incidental" to its lawful sale of copyright licenses.  Defendant cites to caselaw establishing that First Amendment-protected speech cannot be actionable under the common law and statutory rights of publicity.  (See Def.'s Mot. at 19-21) (citing Cher v. Forum Intern., Ltd., 692 F.2d 634, 639 (9th Cir. 1982) (right of publicity claim regarding use of likeness in advertising magazine to potential subscribers, in which magazine had previously published article about claimant: "[The magazine] would have been entitled to use Cher's picture and to refer to her truthfully in subscription advertising for the purpose of indicating the content of the publication because such usage is protected by the First Amendment."); William O'Neil & Co., Inc. v. Validea.com Inc., 202 F. Supp. 2d 1113, 1119 (C.D. Cal. 2002) (right of publicity claim regarding book containing discussion of financial analysts: "*The Market Gurus* is a book that analyzes the investment strategies of well-known financial analysts and stock pickers.  It does not 'propose a commercial transaction' and is therefore not commercial speech.  Because it is not commercial speech, the book is entitled to the full panoply of First Amendment protections."); Page v. Something Weird Video, 960 F. Supp. 1438 (C.D. Cal. 1996) (right of publicity claim regarding movie advertisements: "Motion pictures and films generally enjoy. . . . First Amendment protection."); Gionfriddo v. Major League Baseball, 94 Cal. App. 4th 400, 412 (2001) (right of publicity claim regarding use of baseball players' names and statistics in game programs, websites, and video clips: "In the uses challenged, Baseball is simply making

11

historical facts available to the public through game programs, Web sites and video clips. The recitation and discussion of factual data concerning the athletic performance of these plaintiffs command a substantial public interest, and, therefore, is a form of expression due substantial constitutional protection."); <u>Montana v. San Jose Mercury News, Inc.</u>, 34 Cal. App. 4th 790, 795 (1995) (right of publicity claim regarding posters that reprinted pages from newspaper: "When Joe Montana led his team to four Super Bowl championships in a single decade, it was clearly a newsworthy event. Posters portraying the 49'ers' victories are . . . [a] 'form of public interest presentation to which protection must be extended.'")).

Defendant argues that its display of Plaintiffs' likenesses is "incidental to copyright licensing activity that is itself protected." Defendant's argument confuses *First Amendment*-protected activities and *copyright*-protected activities. Defendant attempts to draw on First Amendment caselaw without even arguing that its own uses are protected by the First Amendment. Instead of arguing that its uses are protected by the First Amendment, Defendant argues that its use of its copyrights is a "lawful use." This argument is simply another way of phrasing its Copyright preemption arguments. Defendant's argument is not well taken.

In any event, Plaintiffs appear to have alleged that Defendant's uses of Plaintiffs' images, names, and likenesses are *not* protected by the First Amendment.[4] Plaintiffs allege that Defendant's use "is not connected with any news, public affairs, sports broadcast or account,

---

[4] Whether intentional or not, Defendant has placed First Amendment protection at issue by citing to First Amendment caselaw and drawing on First Amendment principles.

12

or any political campaign." (Compl. ¶ 24.) Defendant's use is therefore not protected by the First Amendment. See <u>Downing</u>, 265 F.3d at 1002.

**IV. CONCLUSION**

For the reasons stated, the Court DENIES Defendant's Motion to Dismiss.

IT IS SO ORDERED.

DATED: October 27, 2009

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE