UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANNA MARIA ALBERGHETTI, BONNIE POINTER, and JUDY TENUTA, on Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) | CV 09-5735 SVW (CWx) ORDER DENYING PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION [27, 45] |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CORBIS CORPORATION, | ) ) | |
| Defendant. | ) ) | |

## I.   INTRODUCTION

    Plaintiffs, Anna Maria Alberghetti and Bonnie Pointer, are artists/entertainers who have worked in a variety of mediums.[1] Plaintiffs are both California residents.  (Compl. ¶¶ 7-8.)  Defendant Corbis Corporation is a photo-licensing company incorporated in Nevada and headquartered in Washington state.

---

[1] Judy Tenuta was formerly a Plaintiff in this action, but per the parties' stipulation and the Court's December 10, 2009 Order, she has been dismissed without prejudice.

On its website, Defendant provides a catalog of roughly five million photographs available to its users.  (MacLean Decl. ¶¶ 6, 15.) The website's users can purchase a license to use those photographs. Plaintiffs allege that their photographs and names are included in this online catalog.  Plaintiffs allege that Defendant's users are able to type search terms (such as names) into the website, which sorts the files according to the user's search.  Plaintiffs further allege that Defendant itself has taken efforts to match individuals' names with their photographs.  Also, a reduced-size copy of each photograph appears in the catalog.

As part of the licensing agreement it sells to its users, Defendant notifies its licensees that they are only licensing the copyright to use the image and that the buyer may have to obtain the additional rights in order to display and use the images.  Defendant's agreement specifically notes that licensees may have to obtain licenses to use the photo subjects' rights of publicity.

Plaintiffs' Complaint alleges that Defendant has misappropriated Plaintiffs' statutory and common law rights of publicity by using Plaintiffs' names, images, and likenesses without Plaintiffs' consent. Plaintiff also asserts a related unjust enrichment claim.

The essence of Plaintiffs' claim is that Defendant is infringing on Plaintiffs' rights by providing a searchable catalog of its photo database.  This catalog uses Plaintiffs' names and images to advertise the underlying product offered by Defendant (copyright licenses). Thus, Plaintiffs assert that Defendant infringes their rights of publicity because Defendant's use of their names and images helps Defendant sells its photo copyright licenses to its users.

In its answer, Corbis admits that it "has displayed photographic works in which Plaintiffs appeared on Corbis' Website for the purposes of selling copyright licenses." (Answer ¶ 22.)  It also admits "that the names of Plaintiffs may be used in the search toolbar on Corbis' Website to locate those works." (Id.)  Corbis admits that it "has sold copyright licenses for some of those works" in which Plaintiffs' appeared.  (Id. at ¶ 21.)  Corbis further admits that it "charges a varying rate for the license of each work depending on its intended end-use." (Id. at ¶ 20.)

The Court previously denied Defendant's Motion to Dismiss. Defendant asserted that Plaintiffs' claims were preempted by federal copyright law.  The Court held that Plaintiffs' rights of publicity were legally distinct from Defendant's copyrights, and were therefore not preempted by federal copyright law.  The Court further held that, under the facts alleged in Plaintiffs' Complaint, Defendant's activities were not entitled to blanket First Amendment protection.

Here, Plaintiffs are moving for class certification under Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3).  Plaintiffs seek to certify the following class:

> All California residents whose names, images, or likenesses have
> been exploited by Corbis Corporation, ("Corbis" or the "Company")
> without their permission, during the applicable statute of
> limitations time period through Corbis' sale of purported licenses
> to use said names, images, or likenesses to consumers, via the
> Company's websites, including www.corbis.com,
> www.corbismotion.com, or www.corbisoutline.com.  Also included in
> the Class are all non-residents of California who are United

States citizens and whose names, images, or likenesses have been exploited by Corbis in the same manner as described in the preceding sentence, but only to the extent that such exploitation occurred through sales of purported licenses to California residents.  Excluded from the Class are defendant Corbis, and Corbis' officers, directors, employees, representatives, parents, subsidiaries, and affiliates.  Also excluded from the Class are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

(Motion at 1.)

## II.  LEGAL STANDARD

### A.   Procedural Issues

The District Court has broad discretion to grant or deny a motion for class certification.  See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001); see also Molski v. Gleich, 318 F.3d 937, 947 (9th Cir. 2003).

In a motion for class certification, the burden is on the moving party to make a prima facie showing on each of the elements of Rule 23(a) and at least one of the class types under Rule 23(b).  See Zinser, 253 F.3d at 1186.  The class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982).  Although the Court must

take the parties' pleadings as true, it need not accept the parties' pleadings as satisfying the Rule 23(a) requirements.  See Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  Instead, the court requires "sufficient information to form a reasonable judgment. . . on each of the Rule's requirements."  Id.; see also Doninger v. Pac. Northwest Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977) ("The burden of demonstrating that the elements of section (a) are satisfied is on the party seeking to have a class certified.  There must not only be allegations relative to the matters mentioned in Rule 23 . . . but, in addition, there must be a statement of basic facts.  Mere repetition of the language of the Rule is inadequate.") (internal citations, quotations, and alterations omitted).

In order to determine whether the requirements have been met, the Court must also examine any legal questions that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Coopers & Lybrand v. Livesay, 437 U.S. 463, 469 (1978); Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992).  However, "[a]lthough some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage."  Staton v. Boeing Co., 327 F.3d 938, 954 (9th Cir. 2003) (quoting Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983)).  The Court may not deny class certification because the putative class's legal theory may ultimately fail on the merits.  See United Steel, Paper & Forestry, Rubber, Manufacturing Energy, Allied Industrial & Service Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co, No. 09-56578, slip op. at 390-91

(9th Cir. Jan. 6, 2010).  As the Ninth Circuit has explained, "a court can never be assured that a plaintiff will prevail on a given legal theory prior to a dispositive ruling on the merits, and a full inquiry into the merits of a putative class's legal claims is precisely what both the Supreme Court and we have cautioned is not appropriate for a Rule 23 certification inquiry."  Id. at 391 (citations omitted).  Nevertheless, if the plaintiffs' legal theory presents "serious problems" related to administering the class action that are apparent at the time of the class certification motion, denial may be appropriate.  Id. at 392 (citing Andrews v. Am. Tel. & Teleg. Co., 95 F.3d 1014, 1023 (11th Cir. 1996)).

**B.  Legal Rights at Issue**

It is helpful to refresh the basic elements of Plaintiff's causes of action.  "California has long recognized a common law right of privacy for protection of a person's name and likeness against appropriation by others for their advantage.  To sustain a common law cause of action for commercial misappropriation, a plaintiff must prove: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury."  Downing v. Abercrombie & Fitch, 265 F.3d 994, 1001 (9th Cir. 2001) (citing Eastwood v. Super. Ct., 149 Cal. App. 3d 409, 416-17 (1983)) (internal quotations omitted).

"In addition to the common law cause of action, California has provided a statutory remedy for commercial misappropriation under California Civil Code § 3344.  The remedies provided for under California Civil Code § 3344 complement the common law cause of action;

they do not replace or codify the common law.  Section 3344 provides in relevant part, 'any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner . . . for purposes of advertising . . .  without such person's prior consent . . . shall be liable for any damages sustained by the person.'  Under section 3344, a plaintiff must prove all the elements of the common law cause of action.  In addition, the plaintiff must allege a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose."  Downing, 265 F.3d at 1001 (internal citations omitted).

Here, Plaintiffs allege that Defendant violated their statutory and common law rights by using Plaintiffs' names, images, and likenesses to advertise Defendant's product to the public.  As explained in one of the seminal California cases on the issue, "one of the primary purposes of advertising is to motivate a decision to purchase a particular product or service.  The first step toward selling a product or service is to attract the consumers' attention."  Eastwood, 149 Cal. App. 3d at 420.  Here, Plaintiffs allege that Defendant used Plaintiffs' names, images, and likenesses to "attract the consumers' attention" and "motivate a decision to purchase" Defendant's products.  Plaintiffs assert that their claims are identical to the other class members' claims: Defendant used all the class members' names and images in the same manner – to promote Defendant's copyright licenses.

///

///

///

## III. DISCUSSION

### A.   Rule 23(a) Prerequisites

Fed. R. Civ. P. 23(a) sets out the four prerequisites that must be satisfied in any class action.

> Prerequisites to a Class Action.  One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### 1.   Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." "The Ninth Circuit has found that classes with fewer than 100 members, and as few as 39, meet the numerosity requirement." In re Syncor Erisa Litig., 227 F.R.D. 338, 343 (C.D. Cal. 2005) (citing Jordan v. County of Los Angeles, 669 F.2d 1311, 1319 & n. 10 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810).

Here, Defendant's website contains millions of images, a substantial number of which contain a person's image or likeness. Defendant itself states that the putative class includes potentially "hundreds of thousands" of individuals. (Opp. at 5.)  The numerosity requirement is satisfied.

8

### 2.   Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  As discussed in Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998):

> Rule 23(a)(2) has been construed permissively.  All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Id. at 1019.

"The commonality requirement 'serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management'." Rodriquez v. Hayes, __ F.3d __, at *11, 2010 WL 6394 (9th Cir. 2010) (quoting Walters v. Reno, 145 F.3d 1032, 1045 (9th Cir. 1998)).

"Commonality" is one of the central points of dispute between the parties.  But for purposes of this analysis, their disputes relate more to the *predominance* of common issues for purposes of certifying a class under Rule 23(b)(3), the *typicality* of the named Plaintiffs' claims and defenses under Rule 23(a)(3), and the *adequacy* of the named Plaintiffs to represent the putative class under Rule 23(a)(4).

At least for purposes of the Rule 23(a)(2) prerequisite – which is construed "permissively," Rodriquez, 2010 WL 6394 at *11 – the putative class involves common questions of law or fact.  Plaintiffs allege that Defendant has used all of the putative class members' names, images, and likenesses in a manner that violates the putative class members' rights of publicity.

### 3.   Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Though this element overlaps with the "commonality" requirement, see Falcon, 457 U.S. at 157 n.13, a "representative[s] claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.

Here, the named Plaintiffs allege that Defendant used their photographs and names in connection with Defendant's sale of copyright licenses.  The putative class members allegedly suffered injuries through Defendant's use of their names or their images.  These injuries are "reasonably coextensive"; in fact, the claims are "substantially identical" (though that is not the standard).  See Hanlon, 150 F.3d at 1020.  Also, Defendant has not identified any "unique defenses" that would apply specifically to the Named Plaintiffs and not to other members of the class.  See Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  Plaintiffs therefore satisfy the typicality requirement.

Plaintiffs are typical in spite of the fact that they are artists and entertainers who seek to represent the interests of class members who are not artists, entertainers, or celebrities.  California rights of publicity clearly extend equally to celebrities and non-celebrities alike.  See, e.g., Daly v. Viacom, Inc., 238 F. Supp. 2d 1118 (N.D. Cal. 2002) (non-celebrity suing over use of her likeness in television program).  If Defendant violated an individual's rights, it does not matter whether that individual was a well-known entertainer or a

1   nameless face in the crowd.  Both people are entitled to legal relief.

2              4.   Adequacy

3       Rule 23(a)(4) requires that "the representative parties will

4   fairly and adequately protect the interests of the class."  The

5   requirement depends on "the qualifications of counsel for the

6   representatives, an absence of antagonism, a sharing of interests

7   between representatives and absentees, and the unlikelihood that the

8   suit is collusive."  Walters v. Reno, 145 F.3d at 1046

9   (quoting Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1994)).  Or, as

10  the Ninth Circuit has explained:

11       To determine whether the representation meets this standard, we

12       ask two questions: (1) Do the representative plaintiffs and their

13       counsel have any conflicts of interest with other class members,

14       and (2) will the representative plaintiffs and their counsel

15       prosecute the action vigorously on behalf of the class?

16  Staton, 327 F.3d at 957 (citing Hanlon, 150 F.3d at 1020; Molski, 318

17  F.3d at 955).

18              a.   Adequacy of counsel

19       First, the Court notes that there is no dispute as to the adequacy

20  of Plaintiffs' counsel.  Cf. Fed. R. Civ. P. 23(g)(1)(B) (class counsel

21  "must fairly and adequately represent the interests of the class").

22              b.   Notice to class members and due process rights

23       Defendant asserts that the potential size of the class, combined

24  with the indefiniteness of the putative class, renders it unmanageable.

25  Defendant rightly notes that "the majority of people appearing in the

26  Corbis images are unknowns, and the website contains no identifying

27  information whatsoever."  (Opp. at 5.)  Defendant continues: "Thousands

28

of unnamed individuals captured in photographs simply by [their] chance appearance in public may have no idea that a photograph was taken and no idea that the image is available for license on Corbis's websites. (<u>Id.</u>)

To support the assertion that many of the putative class members are unidentified (and, indeed, unidentifiable), Defendant introduces images from the website that include the captions "**Rescue Workers** Sifting Through Earthquake Torn Building," (Ex. 43), "**East German Soldiers** on Top of Berlin Wall," (Ex. 45), "**Couple** Watching Buildings Burn," (Ex. 46), "**Demonstrator** During the LA Riots," (Ex. 47), "Bono with an **unidentified woman** on stage during the Irish rock band U2 performance at the 1983 US Festival," (Ex. 48), "**Woman** Holding Birth Control Pills," (Ex. 49), "**Roller Skaters and Jogger** in Central Park," (Ex. 54), and "**People** relaxing near the bandstand by the boating lake in Regent's Park," (Ex. 55). (Emphasis added for all captions). Each of these images accurately describes the subject matter: some nameless person or people pictured at an noteworthy event or scene. Each of these pictures contains one or more people who are not readily identifiable by Plaintiffs, Defendant, or the Court.

Due process requires that potential class members receive proper notice so that they may participate in the litigation or opt-out and preserve the right to institute their own action. <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 811-12 (1985). "The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" <u>Id.</u> at 812 (quoting

///

12

1  <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314-15

2  (1950)).

3      In order for the named Plaintiffs to "fairly and adequately"

4  represent the interests of these absent class members, the class

5  members must be able to object, opt out of the class, or otherwise

6  insure that their own rights and interests are protected.  Yet adequate

7  notice is simply impossible for the proposed class.  Even if the Court

8  and the parties were able to inform every living person about this

9  lawsuit, it is unlikely that many of putative class members would

10  realize that their images are being used by Defendant.  Unaware that

11  their rights are at issue, these individuals would be unable to obtain

12  a recovery - and yet their legal rights would be extinguished by the

13  present action.

14      In this regard, the case is similar to the Ninth Circuit's

15  decision in <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227 (9th Cir.

16  1996).  That case involved a pharmaceutical tort action in which a

17  significant number of the potential class members were likely unaware

18  that they had suffered an actual harm, and thus were unaware of their

19  membership in the proposed class.  The court explained:

20      [N]otice may be problematic.  The number of known users who have

21      reportedly suffered actual injuries from the drug is relatively

22      small in comparison with all the users of the drug, so that many

23      potential members of the classes cannot yet know if they are part

24      of the class.  We therefore have serious due process concerns

25      about whether adequate notice under Rule 23(c)(2) can be given to

26      all class members to enable them to make an intelligent choice as

27      to whether to opt out.

28

Id. at 1234.  Just like the Valentino court, this Court is concerned about the adequacy of notice to the members of the proposed class.  If the class members are unaware that they have suffered any harm, then they cannot meaningfully exercise their rights in this class action.

In the Reply, Plaintiffs do not respond directly to Defendant's concerns regarding the putative class members who appear on Defendant's websites as "faces in the crowd."  Plaintiffs assert only that Defendant's users must type in a word or phrase in order to search Defendant's websites, and that Defendant's own records should therefore reveal any person whose name or likeness has been infringed.  (Reply at 8.)  This is true for the famous class members whose names have been entered into the database, but not for the nameless faces in the crowd.  Those nameless class members are, for all practical purposes, unidentifiable, and Plaintiffs have not adequately addressed the Court's due process concerns about giving notice to the absent class members.

### c.   Adequacy and injunctive relief

Plaintiffs are clearly inadequate representatives to the extent that they are seeking a mandatory class under Rule 23(b)(2).  Plaintiffs disagree as to whether injunctive relief is appropriate: one named Plaintiff wants to enjoin all of Defendant's uses of her image; the other named Plaintiff seems to recognize that media-related uses may be beneficial.  Finally, it seems that some of the class members might be strongly opposed to injunctive relief, yet their interests would be completely unrepresented in this action.

It is well-established that class representatives are inadequate if they seek relief that putative class members do not wish to seek.

In *East Texas Motor Freight Syst. Inc. v. Rodriguez*, 431 U.S. 395
(1977), the defendant trucking company maintained separate seniority
lists for city truckdrivers and "over-the-road, or 'line,'"
truckdrivers. *Id.* at 397. The effect of the separate seniority lists
was that when an employee was transferred from the city list to the
line list (or vice versa), the employee lost any seniority established
in the previous position. *Id.* at 397-98. The plaintiffs sought
injunctive relief requiring the defendant to merge the lists; yet, in a
union vote, a "large majority" of the employees (many of whom were
putative class members) had *rejected* a union proposal calling for the
exact same relief being sought by the class. *Id.* at 400 & n.4. Among
other issues decided in the case, the Supreme Court held that "the
named plaintiffs were not appropriate class representatives" because of
"the conflict between the vote by members of the class rejecting a
merger of the city- and line-driver collective-bargaining units, and
the demand in the plaintiffs' complaint for just such a merger." *Id.*
at 405 (citing *Hansberry v. Lee*, 311 U.S. 32, 44-45 (1940) (internal
footnote omitted)). For obvious reasons, a class representative is not
adequate if the representative seeks relief which the class members do
not want.

In the present case, the individual Plaintiffs and their lawyer
are all in conflict over whether to seek injunctive relief and how to
define the scope of injunctive relief. The class is not properly
certified under Rule 23(b)(2) because, among other concerns, the named
Plaintiffs are not adequate representatives of the interests of all the
class members with respect to injunctive relief.

Plaintiff Bonnie Pointer repeatedly states that broad injunctive

15

relief is appropriate because she wants to have "say-so" over others' use of her image, and that people should ask her permission before printing a picture of her. (Def.'s Ex. 27, Tr. at 59:7; see also id. at 80:6-7; 88:7, 94:14-16.) In fact, she bluntly says, "I have a problem with all my pictures being used without my permission." (Id. at 92:23-24.) Thus, Pointer appears to believe that broad injunctive relief is appropriate.

On the other hand, Anna Maria Alberghetti appears to believe that media-related uses may be permissible. Alberghetti notes that newspapers article containing her picture provide her with "[p]ublicity," (Def.'s Ex. 26, Tr. at 79:5-6), and appears to believe that such uses are permissible as long as she is compensated for the use. Her deposition testimony makes clear that injunctive relief is not her goal – monetary damages are. (Id. at 74:8-17 ("If Corbis is going to sell this photograph [to Life magazine], I should get compensated for it because it's my face."); id. at 85:2-86:5 (stating that she wishes Corbis to take down her pictures "If I am not going to get compensated for it," and that she believes that all entertainers feel the same way "because I think they all would like to be compensated, as I do.") (emphasis added).) She even acknowledges that some putative class members (including herself) might prefer that Corbis continue making their images available for publicity purposes even if they were not compensated. (Ex. 26, Tr. at 87:16-88:3, 91:20-92:9, 93:1-17; 95:20-96:10.)

It appears, then, that for Alberghetti, she and the putative class seek *monetary relief* from the Defendant, not injunctive relief. For Pointer, though, the putative class seeks a mix of injunctive and

16

monetary relief.  Common sense counsels that Alberghetti is correct that some of putative class members wish to increase their own publicity and would prefer not to have a broad injunctive against Defendant.  For those class members, monetary damages would be the *only* form of relief.  Accord *Stilson v. Reader's Digest Ass'n, Inc.*, 28 Cal. App. 3d 270, 275 (1972) (rejecting proposed class action against defendant magazine for using between twenty and fifty million people's names in connection with advertising campaign, and noting that "[i]t cannot be assumed that each of the millions in the class objects to such use of his name, and injunction would hardly be granted absent some desire for it by each supposed beneficiary.")

Plaintiffs' Reply does not help their case, as it ignores the stated interest of Alberghetti (and the likely interest of some putative class members) to achieve greater publicity.  Plaintiffs' counsel writes: "One of the purposes behind this litigation is to allow Plaintiffs the right to control their names, likenesses, and images for their own benefit and not Corbis'.  For this, an injunction *is* necessary to stop Corbis' wrongful exploitation of the names, images, and likenesses of the proposed class members."  (Reply at 12.)  Counsel thus requests a broad injunction against Defendant.  Thus, it appears that one of the Named Plaintiffs and their counsel disagree over the basic issue of whether or not to seek broad injunctive relief.  This is further evidence that the "adequacy" requirement of Rule 23(a)(4) is not met.

///

///

///

17

### d. Plaintiffs' and counsel's fundamental differences of opinion regarding nature and scope of class action

Aside from the injunction question, the named Plaintiffs and their counsel are inadequate representatives because they fundamentally disagree over the proper definition of the class.  Between the two Plaintiffs and their counsel, there are three different conceptions of what the class should include and what relief it should seek.  This is not a minor issue involving marginal differences of opinion – it reflects a tension regarding the basic scope and direction of the proposed class action.  Because of their differences, the proposed class is improper.  The Court is simply not satisfied that the Named Plaintiffs will "prosecute the action vigorously on behalf of the class." Staton, 327 F.3d at 957.

This inadequacy is fatal to the proposed class.  "The Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members." Phillips Petroleum, 472 U.S. at 812.  The Court must "insure the full and fair consideration of the common issue" in the case.  Hansberry v. Lee, 311 US. 32, 43 (1940).  Among other requirements, Rule 23(a)(4) requires an "absence of antagonism [and] a sharing of interests between representatives and absentees." Walters v. Reno, 145 F.3d at 1046

Anna Maria Alberghetti has expressly stated that she is not interested in representing sports figures, politicians, or "the man on the street":

///

///

18

Q.[2] So what group of people do you desire to represent as part of
    this class?

A. Actors, singers like myself.

Q. What about sports figures? . . .

A. No.

Q. What about politicians?

A. No.

Q. What about the average Joe or Josephine on the street who might
    just have their picture taken and end up in a picture that
    shows up on Corbis? . . . Are you representing that person?

A. I think if that -- I'm representing people in the arts, like
    myself, not a man on the street.

Q. And why aren't you representing the man on the street?

A. Because he didn't spend years building a career, protecting it,
    nurturing it, and making sure that it continues to be viable.
    It's a huge investment.

Q. So are you prepared to represent all California residents whose
    names, images, or likenesses have been exploited by Corbis
    without their permission?

A. Yes.

Q. What about the man on the street?

A. No.

Q. So you're prepared to represent California residents who were
    in the arts whose names, images, or likenesses have been
    exploited by Corbis?

---

[2] The questions were asked by Defendant's counsel in a deposition
conducted for purposes of opposing this Motion.

19

A. Who are famous also.

Q. And are famous.

A. Yes.

. . .

Q. So how do you define famous?

A. When people know who you are. And in my case, that's the only reason they are asking for my photograph is because they do know who I am. Otherwise they wouldn't want it.

Q. So is your claim based on the fact that you believe people are buying a particular photograph because they want a photo of you, rather than a photo of the period, or a photo of the movie?

A. I would say most of the time is they want it of me, if I am in it.

(Def.'s Ex. 26, Tr. at 121:20-123:16.)

    The transcript speaks for itself: Alberghetti does not actually want to represent the proposed class.

    Further, Alberghetti does not appear to be seeking damages where Corbis sells her photo to entities such as the New York Times (for use in a news article) or the New York Yankees (for use on the outfield wall), because such uses provide "[p]ublicity for me." (Ex. 26, Tr. at 91:20-92:6.)  It would appear, then, that Alberghetti will not "vigorously" seek monetary damages on behalf of the class where such damages would interfere with her efforts at obtaining personal publicity.

    Bonnie Pointer has also disclaimed any representation of the nameless, faceless man on the street:

Q. Do you have an understanding of what class of people you desire
   to represent in this lawsuit?

A. Artists.

. . .

Q. This is my hypothetical here, and it is a hypothetical. If a
   photographer goes down, takes pictures of the arts festival,
   there is one of the artists next to her water colors. . . .
   What about the person who is walking along and standing in
   front of this water color who didn't paint it, is that
   somebody that you're representing when they get snapped in a
   picture by the photographer?

A. No.

(Def.'s Ex. 27, Tr. at 23:7-9; 24:22-25:10.)

   Elsewhere, discussing photographs of herself and her sisters (who
performed together as the "Pointer Sisters"), Pointer notes: "I feel
like all artists should be represented and compensated for their work
and their efforts.  And if you're standing there in a photo with us, my
sisters and I or myself, and you're not the artist, that's -- that has
nothing to do with what we're talking about."

(Id. at 26:23-27:3.)

   Thus, neither of the Named Plaintiffs wishes to represent unknown,
unidentified people.  Yet the proposed class would include such people,
as it seeks to represent "All California residents whose names, images,
or likenesses have been exploited by Corbis Corporation . . . [and] all
non-residents of California who are United States citizens and whose
names, images, or likenesses have been exploited by Corbis . . .

///

through sales of purported licenses to California residents." (Motion at 1, emphasis added.)

One of this Court's duties "is to ensure that the parties are not simply lending their names to a suit controlled entirely by the class attorney." Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, 7A Federal Practice & Procedure § 1766 (3d ed. 2009); see also Unger v. Amedisys, Inc., 401 F.3d 316, 321 (5th Cir. 2005) ("Class representatives must satisfy the court that they, and not counsel are directing the litigation.") Though this question most often arises where the class representatives are uninformed about the specific facts of the case, Wright & Miller, Federal Practice & Procedure § 1766 n.16 (collecting cases), the stated principle applies equally to the present situation. Because the Named Plaintiffs each propose a much narrower class than their counsel seeks, the Court finds that the Plaintiffs would not be adequate class representatives. See Richland v. Cheatham, 272 F. Supp. 148, 154-55 (S.D.N.Y. 1967) ("The absence of capacity and incentive of the representative plaintiffs to protect the interests of all the members of the alleged classes, present and absent, is tellingly demonstrated by the conflicting positions . . . among them as to what the classes are and as to who is and is not a member of the classes."); accord Efros v. Nationwide Corp., 98 F.R.D. 703, 707-08 (S.D. Ohio 1983) (rejecting class certification on ground, inter alia, that "many of the claims made by her attorneys are claims that Ms. Efros herself does not want to pursue," which "suggests very strongly

///

///

///

22

1   to this Court that Ms. Efros is not the 'driving force' in this

2   litigation.").[3]

3        Plaintiffs' counsel never addresses this troubling gap between the

4   class that the Named Plaintiffs *actually* want to represent and the

5   class that their Complaint and Motion *says* they want to represent.

6   (See generally Reply.)   The wide gap between Plaintiffs and their

7   counsel leads to one of two conclusions: either the Named Plaintiffs

8   are not adequate representatives of the proposed class, or their

9   counsel is not an adequate representative of the Named Plaintiffs.   In

10  either event, the "adequacy" requirement has not been satisfied.

### e. Adequacy and conflict of law issues

12       Because both of the Named Plaintiffs are California citizens, they

13  will likely have little interest in vigorously representing non-

14  Californian class members in responding to Defendant's conflict-of-law

15  arguments.   This issue also touches on the "typicality" of Named

16  Plaintiffs' claims: Plaintiffs do not have a "typical" claim where

17  conflicts of law are at issue.   Defendant has suggested that California

18  law might not apply to residents of other states that permit entities

19  such as Corbis to license photographs.[4]   Thus, where conflict-of-law is

20

21   [3] Wright and Miller suggest that the problem of the "reluctant
     representative" can often be cured by providing adequate notice to
22   the class members.   Federal Practice & Procedure § 1768.   But here,
     the Court has found *supra* that it is impossible to provide sufficient
23   notice to the members of the proposed class.   Thus, there is no way
     for the class members to insure that their own interests are fully
24   protected.

25   [4] Though the Court may not inquire into the merits of the case,
     Defendant points out that at least two states, Washington (Corbis's
26   principal place of business) and New York, provide statutory safe-
     harbors for photograph distributors such as Corbis.   (Opp at 9 &
27   n.9.)   See Wash. Rev. Code § 63.60.070(7) ("This chapter does not
     apply to the **distribution, promotion, transfer, or license of a**

an issue, Plaintiffs are not "typical" and "adequate" representatives of the class members, some of whom risk losing out on their claim if they are unable to show that California law applies to their case. Cf. Downing v. Abercrombie & Fitch, 265 F.3d 994, 1005-07 (9th Cir. 2001).  The Court is not convinced that the named Plaintiffs would be willing to expend considerable time and resources responding to an argument that is irrelevant to their own cause of action.

### 5.   Summary of Rule 23(a) Requirements

The proposed class does not satisfy the requirements of Rule 23(a), particularly the "adequacy" requirement of Rule 23(a)(4), and to a lesser extent the "typicality" requirement of Rule 23(a)(3).

### B.   Requirements under Rule 23(b)

Because the Rule 23(a) "prerequisites" have not been satisfied, the Court refrains from addressing the specific requirements of the different Rule 23(b) procedures.  The Court notes, however, that Defendant identifies a number of issues that might cause the Court to

---

**photograph** or other material containing an individual's or personality's name, voice, signature, photograph, or likeness to a third party for use in a manner which is lawful under this chapter, or to a third party for further distribution, promotion, transfer, or license for use in a manner which is lawful under this chapter.") (emphasis added); N.Y. Civ. Rights Law § 51 ("nothing contained in this article shall be so construed as to prevent any person, firm or corporation from **selling or otherwise transferring** any material containing such name, portrait, picture or voice in whatever medium to any user of such name, portrait, picture or voice, or to any third party for sale or transfer directly or indirectly to such a user, **for use in a manner lawful under this article**.") (emphasis added).

It is at least possible that residents of these states would be unable to sue under the California laws.  This issue cannot be decided in the present motion, and the Court is not convinced that the named Plaintiffs would fairly and adequately represent absent class representatives in addressing this issue in a future proceeding.  Because California law clearly applies to the named Plaintiffs, they have no incentive to vigorously seek the application of California law to these out-of-state class members.

24

disagree with Plaintiffs' argument that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy" sufficient to satisfy Fed. R. Civ. P. 23(b)(3).  Defendant identifies various affirmative defenses that would require individualized inquiries into each class member's claims.  Also, it is not clear that the class action procedure is "superior" to individual litigation.  The doctrine of collateral estoppel might be available to future litigants against Corbis, and under Cal. Civ. Code § 3344, prevailing parties are entitled to attorneys' fees.  See Cal. Civ. Code § 3344(a); Page v. Something Weird Video, 960 F. Supp. 1438, 1447 (C.D. Cal. 1996).  Thus, there appears to be little reason why a class action is more efficient than individual actions.

**IV.  CONCLUSION**

   For the foregoing reasons, the Court DENIES Plaintiffs' Motion for Class Certification.  The Court sets the following trial schedule:

-Pretrial Conference:    Monday, August 16, 2010, at 3:30 p.m.

-Jury Trial:             Tuesday, August 24, 2010, at 9:00 a.m.

         IT IS SO ORDERED.

DATED:___January 13, 2010_____          _____

                                          STEPHEN V. WILSON

                                          UNITED STATES DISTRICT JUDGE